FILED

IN THE CIRCUIT COURT OF CONWAY COUNTY, ARKANSAS
\_\_\_\_|\_\_\_\_ CIVIL DIVISION

2021 MAR 19 PM 2: 40

DARLENE MASSINGILL
CONWAY COUNTY
CIRCUIT CLERK
BY_____D.C.

**GARY FLOWERS AND DEBBIE FLOWERS,**
**Individually and on behalf of all others similarly**
**situated**                                                    **PLAINTIFFS**

**v.**                          Case No. **15CV-21-60**

**FLYWHEEL ENERGY PRODUCTION, LLC,**
**MERIT ENERGY COMPANY, LLC,**
**RIVERBEND OIL & GAS VII, L.L.C.**                          **DEFENDANTS**

## CLASS ACTION COMPLAINT

Comes now the Plaintiffs Gary Flowers and Debbie Flowers Individually and on behalf of all others similarly situated, ("Plaintiffs") by and through their attorneys, and for their Class Action Complaint against Defendants FLYWHEEL ENERGY PRODUCTION, LLC ("FLYWHEEL PRODUCTION"), MERIT ENERGY COMPANY ("MERIT ENERGY") and RIVERBEND OIL & GAS VII, L.L.C. ("RIVERBEND") state:

### INTRODUCTION

1.      FLYWHEEL PRODUCTION operates 3,630 active natural gas wells in Arkansas, as of September 25, 2020. For some of these wells, MERIT ENERGY or RIVERBEND is the leaseholder. This lawsuit only concerns those wells where FLYWHEEL PRODUCTION is the operator and MERIT ENERGY COMPANY or RIVERBEND is the leaseholder under a gross royalty lease.

2.      In January 2019, FLYWHEEL PRODUCTION began deducting substantial, unauthorized costs from its monthly royalty checks, disregarding the clear language of its royalty contracts, its decades-old business practices, and the understanding and interpretation of the

Arkansas Oil & Gas Commission (the "Commission").[1] FLYWHEEL PRODUCTION, MERIT ENERGY, and RIVERBEND's conduct harms innocent royalty owners and FLYWHEEL PRODUCTION, MERIT ENERGY, and RIVERBEND's honest competitors.

3.      This Action primarily seeks this Court's final determination that the Plaintiffs' and the Class's full contractual rights to payments from MERIT ENERGY or RIVERBEND for the first 1/8 royalty based on their "gross proceeds" contracts are preserved by Ark. Code Ann. §15-72-305(a)(8)(C).

4.      Alternatively, the Plaintiffs seek this Court's final determination that the use of statutory term "net proceeds" Ark. Code Ann. §15-72-305(a)(3) prohibits FLYWHEEL PRODUCTION's post-production deductions, except for taxes, assessment, and true third party costs.

5.      Plaintiffs seek class certification under Ark. R. Civ. P. 23, a final declaratory judgment under Arkansas Uniform Declaratory Judgments Act, Ark. Code Ann. § 16-111-101, *et seq.* and Rule 57 of the Arkansas Rules of Civil Procedure, and "further relief" under Ark. Code Ann. § 16-111-108 which would allow the Plaintiffs and the Class to receive substantial benefits they otherwise could not obtain, including monies Defendants have been held in escrow or kept by Defendants.

6.      This Action also seeks class certification and damages for MERIT ENERGY's and RIVERBEND's breach of contract, unjust enrichment and deceptive trade practices with their scheme to underpay royalty owners in FLYWHEEL PRODUCTION-operated wells where FLYWHEEL

---

[1]      On July 23, 2020, the Commission issued an Order finding FLYWHEEL PRODUCTION illegally took post-production deductions from integrated royalty owners. *See* Exhibit No. 1, Order No. 078A-2019-10 (July 23, 2020).

PRODUCTION is or was the operator **and** MERIT ENERGY or RIVERBEND is or was leaseholder or assignee from and after January 2019.

## PARTIES, JURISDICTION, AND VENUE

7.      Plaintiffs are individuals and citizens of Conway County, Arkansas owning oil, gas, and other mineral interests in Conway County, Arkansas.

8.      The Class are citizens of various states and own oil, gas, and other mineral interests in lands and wells in the State of Arkansas, as further defined.

9.      FLYWHEEL ENERGY PRODUCTION, LLC, is an Oklahoma Limited Liability Company with a principal address in Oklahoma City, Oklahoma. FLYWHEEL PRODUCTION owns and operates certain natural gas assets in the Fayetteville Shale and may be served with process in this Action through its registered agent: CT Corporation System, 124 West Capitol Ave., Ste. 1900, Little Rock, AR 72201-3717.

10.     MERIT ENERGY COMPANY, LLC is a Delaware Limited Liability Company with a principal address in Dallas, Texas. MERIT ENERGY owns and operates certain natural gas assets in the Fayetteville Shale, and may be served with process in this Action through its registered agent: Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201-2425.

11.     RIVERBEND OIL & GAS VIII, LLC, is a Texas Limited Liability Company with a principal address in Houston Texas. RIVERBEND owns and operates certain natural gas assets in the Fayetteville Shale, and may be served with process in this Action through its registered agent: The Corporation Trust Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201-3717.

12.     A substantial part of the event or omission giving rise to the cause of action occurred in Conway County. The Plaintiffs resided in Conway County at the time of the event or omission giving rise to the cause of action.

13.     This Court has subject matter jurisdiction over this Action under Ark. Const. Amend. 80 §6(A) which makes the trial court "the original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution."

14.     At all times relevant hereto, the employees of each Defendant, their subsidiaries, affiliates and other related entities, were the agents, servants and employees of each Defendant, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this complaint is made to any act or transaction of each Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of each Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of each Defendant while actively engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

15.     Southwestern Energy Company, including its subsidiaries, owned working interests and acted as operator of the leaseholds and wells in which Plaintiffs and Class owned mineral interests in the Fayetteville Shale, a part of the Arkoma Basin in Arkansas involving parts of Cleburne, Conway, Faulkner, Van Buren, and White counties.

16.     On or about December 3, 2018, Flywheel Energy, LLC, and certain wholly-owned subsidiaries, acquired from Southwestern Energy, SWN Production (Arkansas), LLC, Fayetteville Shale assets in Arkansas, including wells, an integrated midstream gathering system, compressor

stations, and oil and gas leases.

17.    Due to this acquisition, on or about December 3, 2018, SWN Production
(Arkansas), LLC was converted to FLYWHEEL PRODUCTION. The Certificate of Conversion is
attached as Exhibit No. 2 and incorporated herein by reference.

18.    Upon information and belief, due to this conversion, FLYWHEEL PRODUCTION
became the operator of the leaseholds and wells in which Plaintiffs and Class owned mineral
interests.

19.    MERIT ENERGY/RIVERBEND has outstanding contractual obligations with
leaseholders like Plaintiffs to pay royalties under the lease.

20.    MERIT ENERGY/RIVERBEND and FLYWHEEL PRODUCTION has taken illegal
deductions from Plaintiffs and the Class members, and breached the terms of the Plaintiffs' and
Class Members' leases.

21.    Upon information and belief, on or about May 1, 2019, FLYWHEEL PRODUCTION
became obligated to make royalty payments to Plaintiffs and Class based upon its obligation as
operator of the leaseholds and wells in which Plaintiffs and Class owned mineral interests under
Ark. Code Ann. §15-72-305.

22.    Upon information and belief, MERIT ENERGY and RIVERBEND are obligated to
make royalty payments to Plaintiffs and Class based upon said **gross proceeds** oil and gas leases
due to its obligation as leaseholder.

23.    Plaintiffs' Oil and Gas Lease provides that MERIT ENERGY and RIVERBEND:

2.   In consideration of the premises, the said Lessee covenants and agrees:
A. To deliver to the credit of Lessor the 1/5 part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises;
B. To deliver free of cost to Lessor at the wells, or to the credit of the Lessor at the pipeline which the wells maybe connected 1/5 of all oil and other liquid hydro carbonates produced and saved from the land at Lessor's option, which may be exercised from time to time by written notice; Lessee shall pay to the Lessor the same part of the market value at the well of oil and other liquid hydro carbons of like grade and gravity prevailing on the day and other hydro carbons are run from the lease in the general area in which the land is located.
C. To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing head gasoline or dry commercial gas, 1/5 of the gross proceeds, at the mouth of the well, received by Lessee for the gas during the time such gas shall be used, said payments to be made monthly;
D. Lessor's royalty shall not bear, either directly or indirectly any part of the cost or expenses of production, separation, gathering, dehydration, compression, transportation, trucking, processing, treatment, storage or marketing of the oil and gas produced from the land or any part of the cost of construction, operation or depreciation of any plant or other facilities or equipment used in the handling of the gas;
E. That all royalties, shut-in royalties, or other sums which may become payable to Lessor under the terms of this lease may be paid or tendered by cash, check, electronic funds transfer.

See Exhibit No. 3.

24.     Upon information and belief, on or about May 1, 2019, Plaintiffs and the Class learned FLYWHEEL PRODUCTION as the producer started taking illegal deductions from royalty payments, MERIT ENERGY RIVERBEND have failed to reimburse Plaintiffs and the Class Members for such deductions taken by the operator.

25.     FLYWHEEL PRODUCTION's predecessor in title, Southwestern Energy Company, including its subsidiaries, properly paid Plaintiffs and Class under its obligation as operator and under its obligation as leaseholder under their gross proceeds oil and gas lease.

26.     Upon information and belief, FLYWHEEL PRODUCTION is unlawfully taking post-production deductions from Plaintiffs and Class under its role as operator (Ark. Code Ann. § 15-72-305(a)(6)(A)).

27.     Upon information and belief, MERIT ENERGY and RIVERBEND failed and is failing to fulfill its obligation as the leaseholder under the gross proceeds lease.

## CLASS ACTION ALLEGATIONS

Page 6 of 15

28.     Plaintiffs bring this Action individually and on behalf of a class of similarly situated

persons under Arkansas Rule of Civil Procedure 23.

29.     Plaintiffs sue on their own behalf and for the following Class:

All royalty owners in FLYWHEEL PRODUCTION-operated wells with gross proceeds
leases, where FLYWHEEL PRODUCTION is or was the operator and MERIT ENERGY
and/or RIVERBEND is or was the leaseholder or assignee from and after January
2019. The Class Claims relate only to the proper gross proceeds payment arising
from gross proceeds leases of hydrocarbons produced from wells located in the
State of Arkansas.

The Class Claims do not include lessor's claims in those wells during those periods
where FLYWHEEL PRODUCTION was not the operator and MERIT ENERGY and/or
RIVERBEND was not the leaseholder or assignee.

The persons or entities excluded from the Class are (a) governmental entities,
including federal, state, and local governments and their respective agencies,
departments, or instrumentalities; (b) the States and territories of the United States
or any foreign citizens, states, territories, or entities; (c) the United States of
America; and (d) publicly traded oil and gas exploration companies and their
affiliates, including FLYWHEEL PRODUCTION, MERIT ENERGY and/or
RIVERBEND and their respective parents, affiliates, and related entities (the
"Class").

30.     The members of the Class are so numerous that joinder of all members is

impracticable. Although the precise number of members of the Class is unknown, enough members

are putative Class Members to meet the requirements of Rule 23(a)(1). According to records from

the Arkansas Oil and Gas Commission's website, FLYWHEEL PRODUCTION operates hundreds of

natural gas wells in the State of Arkansas. *See* aogc.state.ar.us/WellData/Wells.aspx (last visited

Sep. 4, 2020).

31.     The precise number and identity of the Class's members can be determined by the

books and records of Defendants.

32.     Plaintiffs are members of the Class.

33.    Plaintiffs' claims are typical of the claims of all Class Members in that all putative Class Members had gross proceeds leases with FLYWHEEL PRODUCTION-operated wells where FLYWHEEL PRODUCTION is or was the operator and MERIT ENERGY and/or RIVERBEND was or is leaseholder or assignee from and after January 2019.

34.    No antagonism exists between the interests of the Representative Plaintiffs and the interest of other Class Members, and the Plaintiffs are fully prepared to pursue their case diligently on their behalf. Plaintiffs are otherwise proper persons to serve as Class Representatives and are interested in the outcome of this litigation and understand the importance of adequately representing the Class. Further, Plaintiffs will fairly and adequately protect the interests of the Class sought to be certified in this Action.

35.    Plaintiffs' counsel are experienced in class action and oil and gas litigation and are well qualified to conduct this litigation and will fairly and adequately protect the interest of the class.

36.    There exist numerous common questions of law or fact within the meaning of Rule 23 and these common questions predominate over any questions affecting only individual Class Members within the meaning of Rule 23(a)(2). These common questions include, but may not be limited to:

a.    Are the gross proceeds leases substantially similar among class members?

b.    Did FLYWHEEL PRODUCTION calculate royalty payments for the first 1/8 royalty due based on "net proceeds," not "gross proceeds" without regard to the underlying lease term?

c.    Did FLYWHEEL PRODUCTION alter its "paydeck" software to calculate its royalty payments for the first 1/8 royalty due based on

"net proceeds" without regard to the underlying lease term?

d.  Did MERIT ENERGY and/or RIVERBEND deal fairly with its "gross proceeds" leaseholders?

e.  Did MERIT ENERGY, RIVERBEND, and/or FLYWHEEL PRODUCTION engage in overall "unconscionable, false, and deceptive acts and practices in business" by failing to comply with the terms of Plaintiffs' and Class' gross proceeds oil and gas leases?

f.  Was MERIT ENERGY and/or RIVERBEND's failure to make royalty payments for the first 1/8 royalty due based on "net proceeds," not "gross proceeds" without regard to the underlying lease term part of an overall scheme perpetrated by MERIT ENERGY and FLYWHEEL PRODUCTION?

g.  Has Defendants failed to account and/or to properly account to Plaintiffs and the Class Members for the royalties due?

h.  Should Defendants prospectively account to Plaintiffs and the Class Members?

i.  As applied, is Ark. Code Ann. § 15-72-305 unconstitutional, and should the remedy of equitable recission be available to the Plaintiffs and the Class?

j.  Does Ark. Code Ann. § 15-72-305(a)(3) prohibit post-production deductions except for taxes, assessment, and true third-party costs?

37.  Defendants have acted on grounds that apply generally to Plaintiffs and all Class Members, so declaratory and injunctive relief is necessary and appropriate for the Class as a whole.

38.  The Class is sufficiently cohesive.

39.  The critical remedy that Plaintiffs seek is primarily declaratory and injunctive. The monetary relief that Plaintiffs seek is secondary to, and flows from, the declaratory/injunctive request.

40.  The common pattern of conduct by Defendants (and the common legal theories for

redressing the misconduct) support the maintenance of this Action as a class action under Rule 23(b) of the Arkansas Rules of Civil Procedure.

41.    Under Rule 23(b), a class action is superior to the other available methods for the fair and efficient adjudication of the controversy because it is desirable to concentrate the litigation of the Class Members' claims to one forum, since it will conserve party and judicial resources and facilitate the consistency of adjudication.

42.    The damages suffered by individual Class Members are relatively modest, and their interest in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for them to seek individual redress for the wrongs done to them, the class mechanism of Rule 23 is superior. Plaintiffs know of no difficulty encountered in the management of this Action that would preclude its maintenance as a class action.

43.    It is administratively feasible to determine whether a particular individual is a member of the Class, because FLYWHEEL PRODUCTION, MERIT ENERGY and/or RIVERBEND have the administrative ability to identify all Class Members because it distributes royalties on a monthly basis.

44.    Upon information and belief, Plaintiffs and the Class have received royalty payments for the first 1/8 royalty due based on "net proceeds," not "gross proceeds" without regard to the underlying lease term, and based on FLYWHEEL PRODUCTION's belief that "net proceeds" includes post-production deductions for matters beyond taxes, assessment, and true third-party costs, thereby allowing FLYWHEEL PRODUCTION, MERIT ENERGY and/or RIVERBEND to be unjustly enriched at the expense and to the detriment of Plaintiffs and Class.

45.    Defendants' failure to pay Plaintiffs and the Class based upon mutually negotiated

gross proceeds oil and gas leases resulted in harm to Plaintiffs and the Class.

## COUNT I:
## DECLARATORY JUDGMENT
### (Against all Defendants)

46.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if

fully set forth herein.

47.     Plaintiffs request that the Court issue a judgment under Ark. Code Ann. § 16-111-

101 and Rule 57 of the Arkansas Rules of Civil Procedure, and declare that:

     a.    Ark. Code Ann. §15-72-305(a)(8)(C) preserves MERIT ENERGY and RIVERBEND's contractual obligations to distribute a royalty in the amount specified by the contract.

     b.    Ark. Code Ann. § 15-72-305 does not allow FLYWHEEL PRODUCTION to deduct from the first 1/8 royalty any expenses. Ark. Code Ann. § 15-72-305 prohibits FLYWHEEL PRODUCTION's deduction of post-production expenses, except for taxes, assessment and true third party costs.

     c.    If Ark. Code Ann. § 15-72-305 is interpreted or applied to prohibit or to override gross proceeds leases, then that interpretation or application is an unconstitutional taking and transfer of the Plaintiffs' and Class Member's valuable rights, interests and properties to MERIT ENERGY and RIVERBEND for private in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article 2 Section 22 of the Arkansas Constitution, and the Court must declare the leases void and unenforceable, and pay over to Plaintiffs and the Class Members, including the amount eighth-eighths (8/8ths) of the value of all gas that has been or will be produced and sold by MERIT ENERGY and RIVERBEND, with interest thereon and any monetary or economic benefits, advantages or profits derived therefrom by MERIT ENERGY and RIVERBEND.

     d.    All proceeds attributable to Plaintiffs' and the Class Members' interests must be released from escrow and paid to the Plaintiffs and the Class Members.

     e.    Defendants must account for the methodology it used to calculate the

escrowed and withheld proceeds.

  f. If Ark. Code Ann. § 15-72-305 is interpreted or applied to prohibit or to override gross proceeds leases, then MERIT ENERGY and RIVERBEND must account to the Plaintiffs and the Class Members as unleased mineral owners and give up and pay over to Plaintiffs and the Class Members the value to MERIT ENERGY and RIVERBEND of all gas produced and sold attributable to Plaintiffs and the Class Members, including interest and any other monetary or economic benefits, advantages of profits of MERIT ENERGY and RIVERBEND.

48. Under Ark. Code Ann. § 16-111-108, Plaintiffs seek "further relief" on any declaratory judgment or decree entered in this Action.

**COUNT II:**
**BREACH OF CONTRACT**
**(Against Separate Defendant MERIT ENERGY and RIVERBEND)**

49. Plaintiffs hereby incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

50. Plaintiffs and the Class entered into gross proceeds oil and gas leases, which were acquired by Defendants through the above-mentioned conversion, which state that the Lessee (Defendant) "covenants and agrees" to pay the Lessor (Plaintiff and the Class) in accordance with the lease.

51. Defendants failed to pay Plaintiffs and the Class in accordance with the gross proceeds oil and gas lease.

52. Defendants have failed to do what the lease required of it and therefore there is substantial failure of consideration.

53. Plaintiffs and the Class have been injured due to Defendants' failure to pay Plaintiffs and the Class in accordance with the terms of the lease.

**Page 12 of 15**

## COUNT III:
## UNJUST ENRICHMENT
### (Against All Defendants)

54.    Plaintiffs hereby incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

55.    Plaintiffs and Class provided good and valuable consideration, specifically the exclusive use of lands described in the Plaintiffs' and each member of the Class' gross proceeds oil and gas lease for the purpose of prospecting, exploring, drilling, mining, operating for and producing oil or gas or both.

56.    It was reasonably expected that Plaintiffs and the Class would be paid in accordance with the terms of the gross proceeds oil and gas leases.

57.    Defendant was aware that Plaintiffs and the Class were previously paid in accordance with the terms of the gross proceeds lease prior to the above-mentioned conversion and were expecting to be paid in accordance with the terms of the gross proceeds lease after the above-mentioned conversion.

58.    Defendants' failure to pay in accordance with the terms of Plaintiffs' and the Class' gross proceeds lease has unjustly enriched Defendants to the detriment of Plaintiffs and the Class.

59.    Plaintiffs and the Class have been injured due to Defendants' failure to pay Plaintiffs and the Class in accordance with the terms of the lease.

## COUNT IV:
## DECEPTIVE TRADE PRACTICES
### (Against all Defendants)

60.    Plaintiffs hereby incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

61.     Plaintiffs and the Class have sustained actual financial loss due to the fact that Defendants have failed and continually fails to pay them in accordance with their gross proceeds oil and gas lease.

62.     Defendants engaged in unconscionable, false, and deceptive acts and practices in business by failing to comply with the terms of Plaintiffs' and the Class' gross proceeds oil and gas lease.

63.     Plaintiffs' and the Class' actual financial loss was proximately caused by Defendants' conduct.

## DEMAND FOR JURY TRIAL

64.     Under Rule 38(b) Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests the following relief:

A.     Determine this action be maintained as a class action under Rule 23 of the Arkansas Rules of Civil Procedure, appoint Plaintiffs as Class Representatives, and Plaintiffs' counsel as Class Counsel;

B.     Declaratory relief and supplemental relief under the Declaratory Judgments Act;

C.     Damages for breach of contract;

D.     Damages for unjust enrichment;

E.     Damages for deceptive trade practices;

F.     Costs, including reasonable attorneys' fees, as permitted by law; and

G.     Such other relief in law and equity, including without limitation, costs, pre-judgment interest, post-judgment interest, and any other relief to which

Plaintiffs and Class may be entitled.

DATE: March 19, 2021                              Respectfully Submitted,

M. Edward Morgan, (AR #82113)
Nathan S. Morgan (AR#09269)
MORGAN LAW FIRM, P.A.
244 Hwy 65N, Suite 5
Clinton, AR 72031-7085
(501) 745-4044 / fax: (501) 745-5358
Email: eddie@medwardmorgan.com
Email: nathan@morganlawfirmpa.com

Thomas P. Thrash (AR #80147)
Will Crowder (AR #03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: tomthrash@thrashlawfirmpa.com
Email: willcrowder@thrashlawfirmpa.com

*Attorneys for Plaintiffs*



EXHIBIT NO. 1 –
ORDER NO. 078A-2019-10 (July 23, 2020)

*Gary Flowers and Debbie Flowers, v. Flywheel Energy Production,LLC, et al.*
**Circuit Court of Conway County, Arkansas**

**PLAINTIFFS' CLASS ACTION COMPLAINT**

**PAGE 205**



**OIL & GAS COMMISSION**

**ORDER NO. 078A-2019-10**                                              **July 23, 2020**

### STATEWIDE AREA
*Multiple Counties, Arkansas*

### REQUEST FOR DETERMINATION AND ORDERS

After due notice and public hearing in North Little Rock, Arkansas, on June 23, 2020, the Arkansas Oil and Gas Commission, in administering an orderly program of compliance and enforcement, has found the following facts and issued the following Order.

### FINDINGS OF FACT

From the evidence introduced at the hearing, the Arkansas Oil and Gas Commission (hereinafter referred to as "AOGC" or the "Commission") finds:

1. That, as a result of royalty owners' concerns expressed to Commission staff, the Director of the AOGC (the "Director") filed an application requesting a Determination and Orders regarding the post-production expenses being charged by Flywheel Energy Production, LLC ("Flywheel") against integrated interests.

2. That Flywheel is formerly known as Southwestern Energy Production (Fayetteville) LLC (and its previous corporate iterations, hereinafter "SWN").

3. That, in early 2019, Flywheel began deducting additional substantial post-production expenses against royalty owners integrated under the statutory authority of the Commission.

4. That, in 2019, Commission Staff asked Flywheel about its new approach to deducting post-production expenses. In July 2019, Flywheel responded to Commission Staff's inquiry regarding the new post-production expenses now being charged against integrated interests and explained its legal position regarding Arkansas statutory law.

5. That Flywheel's position stated in its July 2019 response was counter to the course of dealing that had existed between Flywheel (f/k/a SWN) and royalty owners integrated under the statutory authority of the Commission from approximately 2006 to early 2019.

6. That from 2006 through early 2019, Flywheel (f/k/a SWN) paid royalties to integrated interests without deducting post-production costs, except for taxes, assessments, and true third-party costs.

7. That Flywheel is subject to the authority of the Commission.

8. That Arkansas Code Annotated section 15-72-304(a) applies to all integration orders, whenever the Commission's integration authority is invoked. Arkansas Code Annotated section 15-72-304(a) requires that integrations orders:

**PAGE 206**

ORDER NO. 078A-2019-10
July 23, 2020
Page 2 of 3

shall be made after notice and an opportunity for a hearing and shall be upon terms and conditions that are just and reasonable and that will afford the owner of each tract or interest in the drilling unit the opportunity to recover or receive his or her just and equitable share of the oil and gas in the pool without unnecessary expense and will prevent or minimize reasonably avoidable drainage from each developed unit which is not equalized by counter drainage.

9.  That the applicable portion of Arkansas Code Annotated section 15-72-305(a)(3) reads as follows:

> One-eighth (1/8) of all gas sold on or after the first day of the calendar month next ensuing after March 6, 1985, from any such unit shall be considered royalty gas, and the net proceeds received from the sale thereof shall be distributed to the owners of the marketable title in and to the leasehold royalty and royalty.

10. That the term "net proceeds" is undefined by statute, is currently open to more than one interpretation, and is ambiguous.

11. That the operative portion of the Integration Model Lease Form states:

> *"Lessee shall pay Lessor ___ (__) of the proceeds derived from the sale of all gas at the well (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas in an arm's length, non-affiliated transaction. In the event that the sale is to an Affiliate ("Affiliate" being defined as having a ten percent (10%) common ownership), then the proceeds derived from the sale of all gas shall be a price no less than that received from any other purchaser within the governmental township and range in which the lease is situated."*

12. That, as evidenced in the long-term course of dealing, the adoption of Model Forms, and the statements on the record at a prior Commission hearing in 192A-2014-06, Flywheel (f/k/a SWN) previously paid royalty to integrated interests without making post-production deductions except for taxes, assessments, and true third-party costs.

13. That, the Commission affirms its prior utilization and interpretation of the referenced statutes and Commission Model Forms in that post-production deductions for integrated royalty owners are prohibited, except for taxes, assessment, and true third-party costs.

14. That Alan Perkins appeared at the hearing on behalf of Flywheel.

**CONCLUSIONS OF LAW**

1.  That due notice of the public hearing was given as required by law and that the Commission has jurisdiction over the parties and this matter.

2.  That the Commission has the authority to grant the application under the provisions of Act 105 of 1939, as amended.

**PAGE 207**

ORDER NO. 078A-2019-10
July 23, 2020
Page 3 of 3

## ORDER

It is, therefore, ordered:

1. That the term "net proceeds" is undefined by statute, is open to more than one interpretation, and is resultantly ambiguous.

2. That, as evidenced in the long-term course of dealing, the adoption of Model Forms, and the statements on the record at a prior Commission hearing in 192A-2014-06, Flywheel, (f/k/a SWN), previously paid royalty to integrated interests without making post-production deductions except for taxes, assessments, and true third-party costs.

3. That, the Commission affirms its prior utilization and interpretation of the referenced statutes and Commission Model Forms in that post-production deductions for integrated royalty owners are prohibited, except for taxes, assessment, and true third-party costs.

4. That the effect of this Order may be stayed pending any appeal of this matter, conditioned upon Flywheel's escrowing the disputed funds in an interest-bearing account and regularly reporting the location, account number, and balance of the account.

This Order shall be effective from and after **July 23, 2020**; and the Commission shall have continuing jurisdiction for the purposes of enforcement, and/or modifications or amendments to the provisions of this Order.

ARKANSAS OIL AND GAS COMMISSION

Lawrence E. Bengal
Director, Arkansas Oil and Gas Commission

**PAGE 208**

 **OIL & GAS COMMISSION**

**ORDER NO. 078A-2019-10 (Corrected)**                               **July 23, 2020**

### STATEWIDE AREA
*Multiple Counties, Arkansas*

### REQUEST FOR DETERMINATION AND ORDERS

After due notice and public hearing in North Little Rock, Arkansas, on June 23, 2020, the Arkansas Oil and Gas Commission, in administering an orderly program of compliance and enforcement, has found the following facts and issued the following Order.

*Original Order No. 078A-2019-10 contained an error in Paragraph 2 of the Findings of Fact. This Corrected Order No. 078A-2019-10 is corrected to accurately state Flywheel Energy Production, LLC's former name. Given the nature of the error, this Order is issued with the same effective date of July 23, 2020.*

### FINDINGS OF FACT

From the evidence introduced at the hearing, the Arkansas Oil and Gas Commission (hereinafter referred to as "AOGC" or the "Commission") finds:

1. That, as a result of royalty owners' concerns expressed to Commission staff, the Director of the AOGC (the "Director") filed an application requesting a Determination and Orders regarding the post-production expenses being charged by Flywheel Energy Production, LLC ("Flywheel") against integrated interests.

2. That Flywheel is formerly known as Southwestern Energy Production (Arkansas) LLC (and its previous corporate iterations, hereinafter "SWN").

3. That, in early 2019, Flywheel began deducting additional substantial post-production expenses against royalty owners integrated under the statutory authority of the Commission.

4. That, in 2019, Commission Staff asked Flywheel about its new approach to deducting post-production expenses. In July 2019, Flywheel responded to Commission Staff's inquiry regarding the new post-production expenses now being charged against integrated interests and explained its legal position regarding Arkansas statutory law.

5. That Flywheel's position stated in its July 2019 response was counter to the course of dealing that had existed between Flywheel (f/k/a SWN) and royalty owners integrated under the statutory authority of the Commission from approximately 2006 to early 2019.

6. That from 2006 through early 2019, Flywheel (f/k/a SWN) paid royalties to integrated interests without deducting post-production costs, except for taxes, assessments, and true third-party costs.

7. That Flywheel is subject to the authority of the Commission.

**PAGE 209**

ORDER NO. 078A-2019-10 (Corrected)
July 23, 2020
Page 2 of 3

8. That Arkansas Code Annotated section 15-72-304(a) applies to all integration orders, whenever the Commission's integration authority is invoked. Arkansas Code Annotated section 15-72-304(a) requires that integrations orders:

> shall be made after notice and an opportunity for a hearing and shall be upon terms and conditions that are just and reasonable and that will afford the owner of each tract or interest in the drilling unit the opportunity to recover or receive his or her just and equitable share of the oil and gas in the pool without unnecessary expense and will prevent or minimize reasonably avoidable drainage from each developed unit which is not equalized by counter drainage.

9. That the applicable portion of Arkansas Code Annotated section 15-72-305(a)(3) reads as follows:

> One-eighth (1/8) of all gas sold on or after the first day of the calendar month next ensuing after March 6, 1985, from any such unit shall be considered royalty gas, and the net proceeds received from the sale thereof shall be distributed to the owners of the marketable title in and to the leasehold royalty and royalty.

10. That the term "net proceeds" is undefined by statute, is currently open to more than one interpretation, and is ambiguous.

11. That the operative portion of the Integration Model Lease Form states:

> *"Lessee shall pay Lessor ____ (__) of the proceeds derived from the sale of all gas at the well (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas in an arm's length, non-affiliated transaction. In the event that the sale is to an Affiliate ("Affiliate" being defined as having a ten percent (10%) common ownership), then the proceeds derived from the sale of all gas shall be a price no less than that received from any other purchaser within the governmental township and range in which the lease is situated."*

12. That, as evidenced in the long-term course of dealing, the adoption of Model Forms, and the statements on the record at a prior Commission hearing in 192A-2014-06, Flywheel (f/k/a SWN) previously paid royalty to integrated interests without making post-production deductions except for taxes, assessments, and true third-party costs.

13. That, the Commission affirms its prior utilization and interpretation of the referenced statutes and Commission Model Forms in that post-production deductions for integrated royalty owners are prohibited, except for taxes, assessment, and true third-party costs.

14. That Alan Perkins appeared at the hearing on behalf of Flywheel.

## CONCLUSIONS OF LAW

1. That due notice of the public hearing was given as required by law and that the Commission has jurisdiction over the parties and this matter.

**Arkansas Energy & Environment, Oil & Gas Commission**
301 Natural Resources Drive, Suite 102, Little Rock, AR 72205

**PAGE 210**

ORDER NO. 078A-2019-10 (Corrected)
July 23, 2020
Page 3 of 3

    2. That the Commission has the authority to grant the application under the provisions of Act 105 of 1939, as amended.

## ORDER

It is, therefore, ordered:

    1. That the term "net proceeds" is undefined by statute, is open to more than one interpretation, and is resultantly ambiguous.

    2. That, as evidenced in the long-term course of dealing, the adoption of Model Forms, and the statements on the record at a prior Commission hearing in 192A-2014-06, Flywheel, (f/k/a SWN), previously paid royalty to integrated interests without making post-production deductions except for taxes, assessments, and true third-party costs.

    3. That, the Commission affirms its prior utilization and interpretation of the referenced statutes and Commission Model Forms in that post-production deductions for integrated royalty owners are prohibited, except for taxes, assessment, and true third-party costs.

    4. That the effect of this Order may be stayed pending any appeal of this matter, conditioned upon Flywheel's escrowing the disputed funds in an interest-bearing account and regularly reporting the location, account number, and balance of the account.

This Order shall be effective from and after **July 23, 2020**; and the Commission shall have continuing jurisdiction for the purposes of enforcement, and/or modifications or amendments to the provisions of this Order.

ARKANSAS OIL AND GAS COMMISSION

Lawrence E. Bengal
Director, Arkansas Oil and Gas Commission



EXHIBIT NO. 2 –
Certificate of Conversion

*Gary Flowers and Debbie Flowers, v. Flywheel Energy Production, LLC, et al.*
**Circuit Court of Conway County, Arkansas**

**PLAINTIFFS' CLASS ACTION COMPLAINT**

Book 2019 Page 452

DOC: 2019-0452



## The State of Texas

David Whitley
Secretary of State

Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697

Phone: 512-463-5555
Fax: 512-463-5709
Dial 7-1-1 For Relay Services
www.sos.state.tx.us

Re: Original Documents

Dear Sir or Madam:

The attached certificate is an original certificate issued by the Secretary of State. Original certificates issued by the Secretary of State are electronically generated. Consequently, such original certificates are in black and white without gold or raised seals, and they bear the electronic signature of the named Secretary of State.

If you have any questions regarding this matter, please call me at 512-463-5578.

Very Truly Yours,

Deborah Rogers
Certifying Team
Office of the Texas Secretary of State



Book 2019  Page 452.002

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Rolando B. Pablos
Secretary of State

## Office of the Secretary of State

### CERTIFICATE OF CONVERSION

The undersigned, as Secretary of State of Texas, hereby certifies that a filing instrument for

SWN Production (Arkansas), LLC
File Number: 802125617

Converting it to

Flywheel Energy Production, LLC
File Number: [Entity not of Record, Filing Number Not Available]

has been received in this office and has been found to conform to law. ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing the acceptance and filing of the conversion on the date shown below.

Dated: 12/03/2018

Effective: 12/03/2018





Rolando B. Pablos
Secretary of State





CERTIFICATE OF RECORD
RB 2019-0452
VAN BUREN CO, AR FEE $30.00
RECORDED 2/11/2019 10:04:38 AM
DEBBIE BRAY, CIRCUIT CLERK

*Come visit us on the Internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555
Prepared by: Lisa Sartin

Fax: (512) 463-5709
TID: 10340

Dial: 7-1-1 for Relay Services
Document: 852882930002

Book 2019  Page 452.003

DOC: 2019-0452

**THE STATE OF TEXAS**
**CERTIFICATE OF CONVERSION**
**OF A TEXAS LIMITED LIABILITY COMPANY**
**TO AN OKLAHOMA LIMITED LIABILITY COMPANY**

F I L E D
In the Office of the
Secretary of State of Texas

DEC 03 2018

Corporations Section

**ARTICLE ONE**
**CONVERTING ENTITY INFORMATION**

The name of the converting entity is "SWN Production (Arkansas), LLC" (the "*Converting Entity*"). The Converting Entity was formed as a Texas limited liability company on December 29, 2014. The file number issued to the Converting Entity by the secretary of state is 802125617.

**ARTICLE TWO**
**CONVERTED ENTITY INFORMATION**

The Converting Entity is converting to an Oklahoma limited liability company (the "*Conversion*"). The name of the converted Oklahoma limited liability company will be "Flywheel Energy Production, LLC" (the "*Converted Entity*").

**ARTICLE THREE**
**PLAN OF CONVERSION**

A plan of conversion (the "*Plan of Conversion*") has been approved as required by the laws of the State of Texas, the governing documents of the Converting Entity and the laws of the State of Oklahoma, and is on file at the principal place of business of the Converting Entity at 3030 NW Expressway, Suite 1100, Oklahoma City, OK 73112. The Plan of Conversion shall remain on file at such address, which will be the principal place of business of the Converted Entity, following the Conversion. A copy of the Plan of Conversion will be furnished upon written request, without cost, by the Converting Entity before the Conversion or by the Converted Entity after the Conversion to any owner member of the Converting Entity or the Converted Entity.

**ARTICLE FOUR**
**EFFECTIVENESS OF FILING**

This Certificate of Conversion becomes effective upon filing.

**ARTICLE FIVE**
**TAX CERTIFICATE**

In lieu of providing a tax certificate, the Converted Entity shall be responsible for the payment of all fees and franchise and margin taxes as required by law and will be obligated to pay such fees and franchise and margin taxes if the same are not timely paid.

*[Signature Page Follows]*

US 5965755

Book 2019  Page 452.004

DOC: 2019-0452

**Execution**

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: December 3, 2018

SWN PRODUCTION (ARKANSAS), LLC

By:
Name:  Jeremy Fitzpatrick
Title:   Authorized Person

SIGNATURE PAGE TO CERTIFICATE OF CONVERSION
OF SWN PRODUCTION (ARKANSAS), LLC (TX)



EXHIBIT NO. 3 –
Plaintiffs' Oil and Gas Lease

*Gary Flowers and Debbie Flowers, v. Flywheel Energy Production,LLC, et al.*
**Circuit Court of Conway County, Arkansas**

**PLAINTIFFS' CLASS ACTION COMPLAINT**

# OIL AND GAS LEASE

### (PAID UP)

THIS AGREEMENT is made and entered into this 2nd day of May, 2006 (the effective date hereof) between Gary Wayne Flowers, husband and wife, Debbie Flowers , whose address is 137 Sheepskin Road, Center Ridge, AR 72027, hereinafter called Lessor (whether one or more), and David H. Arrington Oil & Gas Inc., whose address is, P.O. Box 2071, Midland, Texas 79702, hereinafter called Lessee.

Witnesseth: That the said Lessor, for and in consideration of a cash bonus in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of Lessee to be paid, kept, and performed, has GRANTED, DEMISED, LEASED and LET, and by these presents does GRANT, DEMISE, LEASE and LET unto the said Lessee, for the sole and only purpose of exploring by geophysical and other methods, mining and operating for oil (including but not limited to distillate and condensate) gas (including casinghead gas and helium and all other constituents), and for laying pipelines and building tanks, powers, stations, and structures thereon, to produce, save, and take care of said products, all that certain tract of land, together with any reversionary rights therein, situated in the County of Conway, State of Arkansas, and described as follows:

<u>Section   31   Township   9 N       Range   15 W</u>

80.0 acres of land, more or less out of the STR(S) Section 31,  Township 9 N, Range 15 W, Conway County, Arkansas and being further described in EXHIBIT "A" attached herewith and made a part of for a more particular description, documents as recorded in the Deed Records, Circuit Clerks Records, Conway County, Arkansas.

SEE EXHIBIT "A" and EXHIBIT "B" ATTACHED HEREWITH AND MADE A PART OF FOR A MORE PARTICULAR DESCRIPTION:

SEE ADDENDUM ATTACHED HEREWITH AND MADE A PART OF:

and containing 80.0 acres, more or less. In addition to the land above described, Lessor hereby grants, leases, and lets exclusively unto Lessee, to the same extent as it specifically described herein, all lands owned or claimed by Lessor which are adjacent, contiguous to, or form a part of the lands above particularly described, including all oil, gas, and their constituents underlying lakes, rivers, streams, roads, easements, and right-of-way which traverse or adjoin any of said lands.

1.    This lease, which is a "paid-up" lease requiring no rentals, shall be in force for a primary term of <u>five (5) years</u> from the date hereof, and for as long thereafter as oil or gas or other substances covered hereby are produced in paying quantities from the leased premises or from lands pooled therewith or this lease is otherwise maintained in effect pursuant to the provisions hereof.

2.   In consideration of the premises, the said Lessee covenants and agrees:

A. To deliver to the credit of Lessor the 1/5 part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises;

B. To deliver free of cost to Lessor at the wells, or to the credit of the Lessor at the pipeline which the wells maybe connected 1/5 of all oil and other liquid hydro carbonates produced and saved from the land at Lessor's option, which may be exercised from time to time by written notice; Lessee shall pay to the Lessor the same part of the market value at the well of oil and other liquid hydro carbons of like grade and gravity prevailing on the day and other hydro carbons are run from the lease in the general area in which the land is located.

C. To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing head gasoline or dry commercial gas, 1/5 of the gross proceeds, at the mouth of the well, received by Lessee for the gas during the time such gas shall be used, said payments to be made monthly;

D. Lessor's royalty shall not bear, either directly or indirectly any part of the cost or expenses of production, separation, gathering, dehydration, compression, transportation, trucking, processing, treatment, storage or marketing of the oil and gas produced from the land or any part of the cost of construction, operation or depreciation of any plant or other facilities or equipment used in the handling of the gas;

E. That all royalties, shut-in royalties, or other sums which may become payable to Lessor under the terms of this lease may be paid or tendered by cash, check, electronic funds transfer.

3  After the end of the primary term if there is a gas well on this lease capable of producing in paying quantities, when gas is not being sold, the Lessee shall pay or tender in advance the sum equal to $25.00 per year for each royalty acre covered hereby.  Payment will be due within sixty (60) days after the well is shut in.  While royalty payments are timely and properly paid this Lease will be held as a producing Lease.  The right of the Lessee to maintain this Lease in force by payment of the shut in gas royalty is limited to a period of two (2) years that follow the expiration of the primary term.  The obligation of the Lessee to pay shut in royalty is a condition and not a covenant.  The payment or tender of royalty under the paragraph may be made by check of Lessee mailed or delivered to the parties and titled thereto on or before the due date.

4.   Lessee is hereby granted the right at any time and from time to time to unitize the leased premises or any portion or portions thereof, as to all strata or any stratum or strata, with any other lands, as to all strata or any stratum or strata, for the production primarily of oil or primarily of gas with or without distillate. However, no unit for the production primarily of oil shall embrace more than 160 acres, or for the production primarily of gas, with or without distillate, more than 640 acres; provided that if any governmental regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so prescribed or as may be used in such allocation of allowable. Operations upon and production from the unit shall be treated as if such operations were upon or such production was from the leased premises whether or not the well are located thereon. The entire acreage within a unit shall be treated for all purposes as if it were covered by and included in this lease except that the royalty on production from the unit shall be as below provided and except that in calculating the amount of any shut-in gas royalties only that part of the acreage originally leased and then actually embraced by this lease shall be counted. In respect to production from the unit, Lessee shall pay Lessor, in lieu of other royalties herein, only such proportion of the royalties stipulated herein as the amount of his acreage placed in the unit, or this royalty interest therein on an acreage basis bears to the total acreage in the unit. Lessee shall file written unit designations in the county in which the leased premises are located. Notwithstanding the limitation that a production unit for oil cannot exceed 160 acres, or a production unit for gas cannot exceed 640 acres, Lessee, as the agent for Lessor is granted the right to execute all necessary ratifications of any unit agreement and/or unit operating agreements as may be necessary to obtain the approval of the Arkansas Oil & Gas Commission for the creation of a field-wide unit without regard to the size of such field-wide unit.

5.   If said Lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties herein provided shall be paid to the Lessor only in the proportion which his interest bears to the whole and undivided fee.

6.   Any provisions herein to the contrary notwithstanding, Lessee shall not have the privilege of using surface water from the leased premises without the prior consent of the Lessor. In the event Lessee drills a water well upon the leased premises for its use in its operations thereon, then upon cessation of its operations, and at Lessor's request, said water well and all pipe and connections will be assigned to Lessor, who shall assume all rights, responsibilities and liabilities, if any, for operation and maintenance of said water well.  Lessee shall have the right to use, free from cost, gas and oil.

7.  When requested by the Lessor, Lessee shall bury his pipelines below plow depth.

8.    No well shall be drilled nearer than 300 feet to any house or barn now on said premises without the written consent of the Lessor.

9.    Lessee shall pay for all damages to growing crops on said land caused by Lessee's operations.

10.    While Lessee is not in default under the terms of the lease and except as otherwise provided, Lessee will have the right at any time within twelve (12) months after the expiration of this Lease to remove all property and fixtures placed by the Lessee on the land, including the right to draw and remove all casings.  At the Lessor's option and upon written request, all property and fixtures will become the property of Lessor if not removed within the permitted period.  Lessee may not remove any gates or cattle guards installed by Lessee.

11.    If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns. However, no change or division in ownership of the land or royalties shall enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land or royalties shall be binding on the Lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof.  The Lessor is granting rights to Lessee that the Lessor would not grant to others. Therefore, prior written approval of the Lessor is required for any assignment or sublease of this lease by Lessee, which consent shall not be unreasonably withheld. All assignments and subleases must require the assignee or subleasee to assume all of the Lessee's obligations under the lease, but the Lessee will remain liable for its obligations regardless of any assignment or sublease by it.

12.    All express or implied covenants of this lease shall be subject to all Federal, State, and Municipal laws, Executive Orders, Rules, and Regulations, and this lease shall not be terminated in whole or in part, nor Lessee held liable in damages, for failure to comply therewith if compliance is prevented by or such failure is the result of any such Law, Order, Rule, or Regulation.

13.    This lease shall be effective as to each Lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the Lessor's above named may not join in the execution hereof. The word Lessor as used in this lease means the party or parties who execute this lease as Lessor although not named above.

14.    Lessee may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to Lessor, or by placing a release of record in the proper County.

15.    Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the Lessee shall have the right at any time to redeem for Lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by Lessor, and be subrogated to the rights of the holder thereof.

16..    This Lease shall never be terminated, forfeited, or canceled for Lessee's failure to perform, in whole or in part, any of the covenants, conditions, obligations and requirements set forth in this Lease, until Lessee, after written notice by Lessor, has been given a reasonable period of time within which to comply with the covenant, condition, obligation, or requirement.

17.    Lessee is expressly granted the exclusive right to conduct geophysical exploration by means of seismograph, vibroseis or similar techniques. However, if Lessee conducts such geophysical exploration or operations on the lands covered by this Lease, all shot holes must be kept a sufficient distance away from Lessor's water wells so as not to cause any damage to the water wells. Lessee shall promptly plug all shot holes with concrete plugs or other approved methods set below plow depth, fill the holes with dirt on top of the plugs, and restore the surface of the lease premises to substantially the same condition it was in prior to the commencement of the geophysical operations. Lessee shall be responsible for any and all damages to the Lessor's property caused as a result of the above described activity or operations.

18.    Lessor recognizes that Lessee has the right to use as much of the surface of the lease premises as a reasonably prudent operator would use to accomplish the purposes of this Lease.

19.  Lessor hereby surrenders and releases all rights of dower and of courtesy and of homestead in the premises described herein, insofar as said rights of dower and of courtesy or of homestead may in any way affect the purposes for which this lease is made, as recited herein.

20.  Should Lessee at any time fail to comply with it's obligations hereunder regarding construction, maintenance or repair within sixty (60) days after certified written notice from Lessor, Lessor shall have the right to do or have done whatever is necessary to fulfill the obligations to its satisfaction and the Lessee shall be liable to Lessor for the reasonable and necessary expenses this incurred by the Lessor to be paid within thirty (30) days after Lessor furnishes Lessee an itemized written statement of the expenses by certified written notice.

21.  Lessee agrees to indemnify and hold harmless Lessor and Lessor's representatives, successors and assigns against all expenses, claims, demands, liabilities and causes of action of any nature for injury to or death of persons and loss or damage to property including without limitation attorney fees, expert fees and court costs caused by Lessee's operations on the land or Lessee's marketing or production from the land or any violation of any environmental requirements by Lessee.  As used in the paragraph, the term "Lessee" includes Lessee, its agents, employees, servants, contractors and any other person acting under its direction and control and its independent contractors.  Lessee's indemnity obligations survive the termination of this Lease. Only as to claims arising during the term of the lease. Lessee does not waive any applicable statue of limitations on any such claim.

22.  In the event that Lessor, during the primary term of this lease, receives a bona fide offer which Lessor is willing to accept from any party offering to purchase from Lessor a lease covering any or all of the substances covered by this lease and covering all or a portion of the land described herein, with the lease becoming effective upon expiration of this lease, Lessor hereby agrees to notify Lessee in writing of said offer immediately, including in the notice the name and address of the offeror, the price offered and all other pertinent terms and conditions of the offer. Lessee, for a period of fifteen days after receipt of the notice, shall have the prior and preferred right and option to purchase the lease or part thereof or interest therein, covered by the offer at the price and according to the terms and conditions specified in the offer.

23.  This instrument may be executed in any number of counterparts, each of which shall be deemed an original and shall be binding upon the party or parties so executing, their heirs, successors and assigns, and all of which when taken together constitute but one and the same instrument.

24.    Lessee agrees to no surface operations without the express written consent of the Lessor's 30.0 ac.  Hay Meadow as described on Exhibit "B" attached herewith and made a part of.

IN WITNESS WHEREOF we sign the day and year first above written.

Lessor:

_Gary Wayne Flowers_        _Debbie Flowers_

**Gary Flowers husband, and wife,** _DEBBIE FLOWERS_

# ADDENDUM TO OIL AND GAS LEASE

Attached hereto and made a part that certain Oil, Gas and Mineral Lease as dated 2nd day of May, 2006, by and between Gary Wayne Flowers, husband and wife, Debbie Flowers, as Lessor(s) whether one or more, and David H. Arrington Oil & Gas, Inc., as Lessee.

**ADDITIONAL PROVISIONS:**

1.      Notwithstanding any other provision hereof, it is understood and agreed that this lease covers and includes oil and gas only (including with oil and gas, all constituent elements thereof and all other liquefiable hydrocarbons and products of every kind or character derived there from and produced therewith, including sulfur), and that all minerals other than oil and gas are excepted here from and reserved to Lessor. Included among the minerals reserved to Lessor and excluded from this lease are coal, uranium and lignite.

2.      Lessee shall pay Lessor for all damages to Lessor's land, fences, gates, roads, drainage, buildings and other improvements, growing crops and cattle, which are caused by or result from Lessee's operations on the leased premises. It is agreed that all roads and locations made, used or constructed by the Lessee shall be terraced in such manner as to best control and prevent erosion. If the surface of the land where any well is drilled has been disturbed by Lessee upon the termination of this lease, Lessee shall within Six (6) months, weather conditions permitting, level and repair the surface of the land in substantially the same condition as is reasonably practicable as it was prior to the commencement of such operations. Lessee shall within Six (6) months remove all equipment from the leased land, remove all rock, soil or other substances brought to the leased land by Lessee and restore the leased land to a condition similar to that prior to the commencement or operations by Lessee. If any fences existing on said lands are cut by Lessee for its purposes, upon agreement between Lessee and Lessor, Lessee shall establish and maintain a good and substantial cattle guard or gate, which gate will be kept locked by Lessee, at such point to prevent the escape of Lessor's livestock at such entrance or any place where Lessee disturbs the fences and Lessee agrees to construct proper and sufficient braces at any point where fences are to be cut prior to cutting such fence. It is agreed that such braces shall be so constructed that slack will not develop in the existing fences. Lessor shall have the right to continue to use the surface of said land for agricultural and grazing purposes, unless said use would interfere with Lessee's operations, and Lessee shall pay to Lessor (or any tenants of Lessor as their interest may appear), any damage to crops, land, livestock, trees or any other property caused by or resulting from Lessee's operations on the leased premises permitted hereunder. Lessee agrees to erect and maintain a fence capable of turning back livestock of ordinary demeanor around its drill site containment pond, tank batteries, and any other facilities placed upon the leased premises as a result of its operations thereon, within Sixty (60) days after receiving written request from Lessor. Additionally, should any of Lessee's operations, geophysical or otherwise, hereunder cause any damage to existing water wells, springs, lakes, ponds or dams, Lessee will be responsible for the repair or restoration of such property or equipment. Lessee shall clean and remove from each well site, tank battery location, Lessee's roads and all other operational sites all discarded materials and debris of every kind as it accumulates, and shall keep each well site, tank battery location, Lessee's roads and all other operational sites in a neat and orderly condition throughout the term of this lease.

3.      Lessee, its employees, contractors or their employees, shall not have the right to hunt or fish on the leased premises, and no firearms or hunting dogs shall be allowed thereon.

4.      Lessee shall have the right to perform all phases of exploration, drilling, production and transportation necessary to find, produce, save and market leased substances, but shall not have the right to use the surface of the leased land for any other activities or for any facilities not necessary to find, produce, save and market leased substances and transport them from the leased land. Lessee shall not have the right to establish and utilize facilities for surface or subsurface disposal of salt water, construct bridges, dig canals, build tanks, power stations, product treatment facilities, telephone lines or employee housing on the leased premises except those on the drilling pad. All pipelines and other equipment not on the drilling pad shall be buried at least 36" deep.

5.      Any provisions herein to the contrary notwithstanding, Lessee shall not have the privilege of using surface water from the leased premises without the prior written consent of the Lessor. In the event Lessee drills a water well upon the leased premises for its use in its operations thereon, then upon cessation of its operations, and at Lessor's

request, said water well and all pipe and connections will be assigned to Lessor, who shall assume all rights, responsibilities and liabilities, if any, for operation and maintenance of said water well.

6.    As stated herein, Lessee shall be liable for all damages to improvements, growing crops, pasture land and livestock that may be caused by Lessee's operations hereunder.

7.    If directed by Lessor, Lessee shall plant hedges or provide other landscaping and shall take measures as may be requested by Lessor to shield all surface equipment from view. Lessee shall keep all surface equipment in a good state of repair and painted as often as is necessary to maintain a good appearance.

8.    Subsequent to the execution of this lease, Lessor agrees to execute and deliver to Lessee any and all documents necessary to perfect title to the land included within this lease.

9.    Lessee's activities under the Lease shall be conducted in a manner expected of a reasonably prudent operator as to exploration for, and production and marketing of, oil, gas, or constituents thereof.

10.    Landowner will be given as reasonable notice as possible, weather conditions permitting as to when drilling operations will commence.

11.    Prior to entry, Lessee agrees to consult with Lessor on the selection of well locations, laying of pipelines and the selection of road locations on the leased premises to minimize the interference with the development uses of said land.

12.    Any right to construct a pipeline on the landowner's property will be limited to the situation of actual production of oil and gas from a drilling unit of which the landowner's property is a part thereof.  Necessary pipeline right of ways over and across lands adjoining the Lessee's drilling unit will be negotiated as a separate pipeline right of way with applicable landowners.

In the event the Lessee elects to form a pool drilling unit as provided for in Paragraph 4 of the Oil and Gas Lease, Upon written request by Lessor , the Lessee will provide Lessor with a copy of Lessee's drilling unit as approved by Arkansas Oil and Gas Commission.

13.    Lessee shall not have free use of water, including water wells drilled by Lessor prior to commencement of Lessee's operations, stock tanks, or creeks, or other materials from said lands without the written consent of the surface owner of the leased premises.  If the surface owner agrees to allow such lease, Lessee agrees to pay the owner of the surface of the leased premises, One Thousand Dollars and 00/100 ($1,000.00) per well for the use of such water, if used by the Lessee.  (5)    Any provisions herein to the contrary notwithstanding, Lessee shall not have the privilege of using surface water from the leased premises without the prior written consent of the Lessor. In the event Lessee drills a water well upon the leased premises for its use in its operations thereon, then upon cessation of its operations, and at Lessor's request, said water well and all pipe and connections will be assigned to Lessor, who shall assume all rights, responsibilities and liabilities, if any, for operation and maintenance of said water well.

14.    Lessee agrees to no surface operations on the attached plat of 30.0 surface (Hay Field) without the express written consent of Lessor.  SEE ATTACHED EXHIBIT "B".

SIGNED FOR IDENTIFICATION:

*[signatures]*

**END OF ADDENDUM**

STATE OF ARKANSAS    §

COUNTY OF CONWAY    §

On this the _19TH_ day of _MAY_ _2006_, before me, _Larry Schmotzer_, the undersigned officer, personally appeared _Gary Wayne Flowers and Debbie_, known to me (or  _FLOWERS_
satisfactorily proven) to be the person(s) whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

> LARRY K. SCHMOTZER
> Notary Public
> POPE COUNTY, ARKANSAS
> My Commission Expires 12-21-2015
> Commission # 12346036

Notary Public, State of Arkansas

Notary's Name (printed):

(Seal)

Notary's Commission Expires:


STATE OF ARKANSAS    §

COUNTY OF CONWAY    §

On this the _____ day of _____, _____, before me, _____, the undersigned officer, personally appeared_____, known to me (or satisfactorily proven) to be the person(s) whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_____

Notary Public, State of Arkansas

Notary's Name (printed):

(Seal)

Notary's Commission Expires:

Prepared by:
David H. Arrington Oil & Gas, Inc.
P.O. Box 2071
Midland, TX 79702

# MEMORANDUM OF OIL AND GAS LEASE

STATE OF ARKANSAS    §

                                          §

COUNTY OF CONWAY    §

WHEREAS, Gary Wayne Flowers, husband and wife, Debbie Flowers , whose address is 137 Sheepskin Road, Center Ridge, AR 72027, (hereinafter called Lessor) and David H. Arrington Oil & Gas, Inc. P. O. Box 2071, Midland, Texas 79702, (hereinafter called Lessee) have entered into an Oil and Gas Lease dated 2nd day of May, 2006 (the Lease), and;

WHEREAS, the Lessee and Lessor have mutually agreed not to record the Lease in its entirety in the records of Conway County, Arkansas, and instead have agreed to record this Memorandum of Lease;

NOW, THEREFORE, in consideration of the valuable consideration given this date, the receipt and sufficiency of which is hereby acknowledged, and of the other terms of the lease, duplicate copies of which have been retained by the parties, Lessor hereby grants, leases, and lets unto the Lessee for the purpose of exploring, drilling, operating for and producing oil and gas from the following described land in Conway County, Arkansas:

Section    31    Township    9 N    Range    15 W

80.0 acres of land, more or less out of the STR(S) Section 31, Township 9 N, Range 15 W, Conway County, Arkansas and being further described in EXHIBIT "A" attached herewith and made a part of for a more particular description, documents as recorded in the Deed Records, Circuit Clerks Records, Conway County, Arkansas.

SEE EXHIBIT "A" ATTACHED HEREWITH AND MADE A PART OF FOR A MORE PARTICULAR DESCRIPTION:

and containing 80.0 acres, more or less.

All in accordance with the terms and conditions of the Lease, the Lease shall be effective for a term of five (5) years from the date of the Lease and as long thereafter as oil or gas or other substances covered thereby are produced from said land. Should there be any conflict between this Memorandum of Lease and the Lease herein referred to, then in all cases the Lease shall take precedence. In addition, in the event of a conflict between the terms of the addendum to the said lease and the terms of the printed lease form, the terms of the addendum to said lease shall prevail.

The provisions hereof shall extend to and be binding upon the heirs, successors and legal representatives and assigns of the parties hereto.

This instrument may be executed in any number of counterparts, each of which shall be deemed an original and shall be binding upon the party or parties so executing, their heirs, successors and assigns, and all of which when taken together constitute but one and the same instrument.

EXECUTED this _19TH_ day of May, 2006.

Lessor:

_Gary Wayne Flowers_ · _Debbie Flowers_ ·
GARY WAYNE FLOWERS HUSBAND AND WIFE, DEBBIE FLOWERS

STATE OF ARKANSAS §
§
COUNTY OF CONWAY §

On this the _19TH_ day of _MAY_ _2006_, before me, _LARRY SCHMOTZER_ the undersigned officer, personally appeared _Gary Wayne Flowers & Debbie Flowers_, known to me (or satisfactorily proven) to be the person(s) whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

LARRY K. SCHMOTZER
Notary Public
POPE COUNTY, ARKANSAS
My Commission Expires 12-21-2015
Commission # 12346036

(Seal)

Notary Public, State of Arkansas

Notary's Name (printed):

Notary's Commission Expires: