IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GARY FLOWERS AND DEBBIE
FLOWERS, individually and on behalf of all
others similarly situated                                        PLAINTIFFS

v.                              Case No. 4:21-cv-00330-LPR

FLYWHEEL ENERGY PRODUCTION,
LLC; MERIT ENERGY COMPANY, LLC;
RIVERBEND OIL & GAS VIII, LLC                        DEFENDANTS

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES,
AND APPOINTMENT OF CLASS COUNSEL**

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

I.   INTRODUCTION ...................................................................................... 3

II.  LEGAL STANDARD .................................................................................. 4

III. FACTUAL BACKGROUND ....................................................................... 7

     A.   Flywheel's Uniform Royalty Payment Practices ............................ 7

IV.  ARGUMENT ............................................................................................. 9

     A.   Plaintiffs have met their burden of satisfying Rule 23(a)'s
     Requirements (1) numerosity; (2) commonality; (3) typicality;
     and (4) adequacy ............................................................................ 10

         1.   Numerosity. ......................................................................... 10

         2.   Commonality. ...................................................................... 12

         3.   Typicality. ............................................................................ 16

         4.   Adequacy. ............................................................................ 17

     B.   Plaintiffs Satisfy Rule 23(b)(3) ...................................................... 18

         1.   Common Questions of Law and Fact Predominate. ................. 18

         2.   A Class Action is Superior to Any Other Method of
         Adjucating These Claims ...................................................... 20

     C.   Plaintiffs Satisfy Rule 23(b)(2) ...................................................... 23

V.   NOTICE ................................................................................................... 24

**VI.   CLASS DEFINITION**.....................................................................**25**

     **ACTUAL AMOUNT RECEIVED ROYALTY CLAUSE**Error! Bookmark not defined.

     **NO DEDUCTION, NO COST CLAUSES** .....Error! Bookmark not defined.

     **GROSS PROCEEDS CLAUSE** .....................Error! Bookmark not defined.

**VII.   CONCLUSION**...........................................................................**33**

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231,
138 L.Ed.2d 689 (1997). ........................................................................ 19, 21

*Amgen Inc. v. Conn. Ret. Plans & Trust Fundings*, 568 U.S. 455,
133 S.Ct. 1184, 185 L.Ed.2d 308 (2013) ....................................................... 6

*Arkansas Louisiana Gas Co. v. Morris*, 294 Ark. 496,
744 S.W.2d 709 (Ark. 1988) .................................................................... 14, 16

*Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 764500
(W.D. Okla. April 20, 2009) ........................................................................ 16

*Bodcaw Oil Co., Inc. v. Atlantic Refining Co.*, 217 Ark. 50,
228 S.W.2d 626 (1950). ............................................................................... 15

*Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870 (N.D. Iowa 2008) ....... 20, 22

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ......................... 23

*Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990) ................................ 17

*Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 683 (E.D. Okla. Oct. 3, 2019) ...... 14

*Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. 02-1236 RHK/AJB,
2003 WL 1955169 (D. Minn. Apr. 21, 2003) ................................................ 6

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543 (W.D.Mo. 2014) .............. 11

*Freebird, Inc. v. Merit Energy Co.*, Civil Action No. 10-1154-KHV-JPO,
2011 WL 13638 (D.Kan. Jan. 4, 2011) ....................................................... 17

*Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 100 S.Ct. 1698,
64 L.Ed.2d 319 (1980) .................................................................................. 5

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.2d 402 (6th Cir. 2012) ................ 14

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ......................... 25

*Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003) ................... 22

*Hanna Oil v. Taylor*, 759 S.W.2d 563, 565 (Ark. 1988)....................................... 15

*Hill v. Kaiser-Francis-Oil Co.*, No. CIV-09-07-R,
    2010 WL 2474051 (W.D. Okla. June 9, 2010) .............................................. 9

*In re Marion Merrell Dow Inc., Sec. Litig.*, No. 92-0609-CV-W-6,
    1994 WL 396190 (W.D. Mo. July 18, 1994) ................................................ 12

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litig.*,
    No. 11-MD-2247 ADM/JJK, 2012 WL 2512750
    (D.Minn. June 29, 2012) ........................................................................ 17, 18

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011).......... 19

*Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004)........................................... 21, 23

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI,
    2020 WL 1970812 (D.Or. Apr. 24, 2020)...................................................... 6

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652,
    94 L.Ed. 865 (1950) ................................................................................. 25

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ................................. 12

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985)............................................. 22

*SEECO, Inc. v. Haes*, 330 Ark. 402, 954 S.W.2d 234 (Ark. 1997) ................ 13, 24

*Smith v. ConocoPhillips Pipeline Co.*, 298 F.R.D. 575 (E.D. Mo. 2014)............. 17

*Smith v. SEECO*, Case No. 4:14CV00435,
    2016 WL 10586286 (E.D. Ark. April 11, 2016)...................................... 6, 16

*Stuart v. State Farm Fire and Casualty Company*,
    910 F.3d 371 (8th Cir. 2018)..................................................................... 11

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)................................ 22

*Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL,
    2018 WL 1955425 (W.D. Mo. Apr. 24, 2018),
    *aff'd*, 963 F.3d 753 (8th Cir. 2020) ............................................................ 24

*W.W. McDonald Land Co. v. EQT Production Co.*, 983 F.Supp.2d 790
    (S.D.W.Va. 2013) ........................................................................................... 9

*Walls v. Sagamore Ins. Co.*, 274 F.R.D. 248 (W.D.Ark. 2011) ...................... 11, 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541,
    180 L.Ed.2d 374 (2011) ............................................................................ 7, 13

## Statutes

ARK. CODE ANN. § 15-72-201 ............................................................................... 1

ARK. CODE ANN. § 15-72-305 ..................................................................... passim

ARK. CODE ANN. § 15-72-305(a)(3) ..................................................................... 2

ARK. CODE ANN. § 15-72-305(a)(8)(C) ................................................................ 2

ARK. CODE ANN. § 15-72-102(8) .......................................................................... 1

ARK. CODE ANN. § 15-72-102(9) .......................................................................... 1

ARK. CODE ANN. § 15-72-701(6) .......................................................................... 1

## Other Authorities

AMI 2401 .............................................................................................................. 14

AMI 2445 .............................................................................................................. 15

## Rules

Fed. R. Civ. P. 23(a) ......................................................................................... 4, 5

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 11

Fed. R. Civ. P. 23(a)(2) ............................................................................. 13, 16, 18

Fed. R. Civ. P. 23(b)(2) ...................................................................................... 24

Fed. R. Civ. P. 23(b)(2)—(3) ................................................................. 6

Fed. R. Civ. P. 23(b)(3) ................................................................. 19, 20

Fed. R. Civ. P. 23(b)(2) ................................................................. 24

Fed. R. Civ. P. 23(b)(3) ................................................................. 18

Fed. R. Civ. P. 23(b)(3)(C) ................................................................. 23

Fed. R. Civ. P. 23(b)(3)(D) ................................................................. 23

Fed. R. Civ. P. 23(c) ................................................................. 24

Fed. R. Civ. P. 23(c)(1)(B) ................................................................. 25

Fed. R. Civ. P. 23(c)(2)(B) ................................................................. 24

Fed. R. Civ. P. 23(g) ................................................................. 18

## **Treatises**

*Restatement (Second) of Contracts* § 211(2) (1981) ............................................. 11

The Plaintiffs Gary Flowers and Debbie Flowers individually and on behalf of all others similarly situated (the "Landowners" or "Plaintiffs") are a group of landowners who have sued Flywheel Energy Production, LLC, ("Flywheel") Merit Energy Company, LLC ("Merit") and Riverbend Oil & Gas VIII, LLC n/k/a Caer Energy, LLC ("Riverbend")(collectively "Defendants") because they did not honor their contracts and legal obligations and pay the proper royalties for the gas extracted from their land. In this case, Flywheel is operator of each putative class member's lease, and Merit and Riverbend are the leaseholder and owner.[1]

---

[1]    An oil and gas **operator** is a company or individual that is responsible for managing and conducting operations related to the exploration, development, and production of oil and gas resources. The operator is typically responsible for the technical and operational aspects of oil and gas development, including drilling, completion, and production activities. The operator also has responsibility for ensuring that all operations are conducted safely, efficiently, and in compliance with applicable regulations and environmental standards. *See* ARK. CODE ANN. §§ 15-72-102(8) and 15-72-201 (defining operator).

A "**leaseholder,**" or "**owner**" on the other hand, is an individual or entity that holds the legal right to explore for, develop, and produce oil and gas on a particular parcel of land. *See* ARK. CODE ANN. §§ 15-72-102(9) and 15-72-701(6)(defining owner).The leaseholder has obtained the right to do so by entering into a lease agreement with the owner of the land. The lease agreement typically specifies the terms and conditions under which the leaseholder may explore for and produce oil and gas on the property, including the duration of the lease, the royalty payments that must be made to the landowner, and any other obligations or restrictions that must be followed.

In general, the leaseholder is the party that holds the legal right to explore for and produce oil and gas on a property, while the operator is responsible for conducting the actual operations related to drilling, completion, and production. In some cases, the leaseholder and the operator may be the same entity, but in many cases, the two roles are separate and distinct.  The leaseholder and operator solidify

The issue of class certification in this case is remarkably straightforward because Flywheel pays a portion of each Class Member's royalty in gross and even recognizes that the class members have gross proceeds leases. When Ms. Flowers inquired with Flywheel why their check had deductions, Flywheel attorney responded with a copy of the unreported *Whisenhunt Investments, LLC* decision, and no further explanation. *See* Exhibit No. 1, Email Bryan Fordo to Mr. and Mrs. Flowers (June 17, 2019, 4:00PM) .

Even though Flywheel recognizes that Class Members have a "gross proceeds leases," Flywheel illegally uses ARK. CODE ANN. § 15-72-305(a)(3) to uniformly breach the terms of the leases. Flywheel justifies this as a benefit to its leaseholders, when, in fact, it pays them less than they have bargained for.

While Flywheel applies this statute to all class members, it ignores ARK. CODE ANN. § 15-72-305(a)(8)(C), which unambiguously states "Nothing contained in this section shall effect the obligations of working interest owners with respect to the payment of royalties, overriding royalties, production payments, or similar interest in excess of the one-eighth royalty [ARK. CODE ANN. § 15-72-305(a)(3)] required to be distributed under this section."

---

their working relationship through a Joint Operating Agreement ("JOA"). A JOA provides the contractual basis for the cooperative exploration, development, and production of oil and gas properties among multiple leasehold cotenants. In this case, Flywheel is the operator and Merit and Riverbend and the leaseholders/owners.

Flywheel's illegal conduct puts them at a competitive advantage over their honest competitors who honor their contracts. As explained in this Brief, class certification is appropriate in this case because each requirement of Rule 23(a) and (b)(2) and (3) is met.

## I.      INTRODUCTION

This is a straightforward case involving Flywheel's scheme and course of conduct in its underpayment of royalties owed to Class Members with whom they have entered into oil and gas leases. The Plaintiffs' and Class's claims are susceptible to common proof—because they all turn on a common course of conduct—Flywheel's royalty calculation and payment practices it applies uniformly to all Class Members.[2]

Flywheel disregards the express language of their oil and gas leases that require Class Members' royalties to be paid based on a percentage of the gross proceeds. Instead, Flywheel pays the Class Members' royalties on the first 1/8th

---

[2]    *See* Exhibit No. 2, *Flywheel's Responses to Request for Admission* No. 23, 26, 31. *See also* Exhibit No. 3, HB1549 Beck Hearing Transcript at pg. 52—55 ("So we blend it. The statute tells us very plainly to do it on a net basis, in which costs are pulled are out, so we do it that way. The issue, as you guys know, is that our predecessor didn't necessarily do it that way all the time . . . **We acknowledge that it's a difference and that some people didn't get deductions and are now having those deductions. It sounds like an injustice. What I would say is that those are windfall payments in favor of the royalty or incorrect payments were in favor of the royalty owner for many years. That stopped when we took over.**")(emphasis added). This is a legal issue for the Court to decide.

royalty based on the net proceeds (after taking deductions for expenses) and pays the Class Members' excess royalty (over the 1/8th) based on the gross proceeds, thereby acknowledging through its course of conduct the Class Members have gross proceeds leases. **Like its predecessor Southwest Energy (SWN), Flywheel has continued to recognize and treat the Class Members' leases as "gross proceeds" leases by paying all royalties in excess of the first 1/8th based on "gross proceeds."**

Flywheel directed its conduct to all Class Members equally, who suffered the same injury. As a result—all Class Members did not receive the full royalties they were owed. Plaintiffs' allegations—which involve substantially uniform contracts, a uniform body of law, and uniform conduct by Flywheel—can and will be proven with evidence common to all Class members.

## II.   <u>LEGAL STANDARD</u>

A Court should certify a proposed class, when a plaintiff demonstrates satisfaction of the requirements found in Rule 23(a) and (b) of the Federal Rules of Civil Procedure. Rule 23(a) sets forth four prerequisites:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are requirements of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims and defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are commonly called: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Gen. Tel. Co. v. E.E.O.C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319, 329 (1980).

After satisfying the requirements of Rule 23(a), a plaintiff must also establish that the action qualifies for class action treatment under one of the three criteria in Rule 23(b), two of which are relevant here:

(2)     the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3)     the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2)—(3).

When determining whether to grant class certification, the United States

Supreme Court has held "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage . . . [m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Fundings*, 568 U.S. 455, 466, 133 S.Ct. 1184, 1194-95, 185 L. Ed.2d 308 (2013). The proposed class representatives are responsible for demonstrating the satisfaction of Rule 23. *See Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. 02-1236 RHK/AJB, 2003 WL 1955169, at *2 (D. Minn. Apr. 21, 2003).[3] "The class certification analysis under Rule 23 is 'rigorous' and may 'entail some overlap with the merits of the plaintiffs underlying claim,'" *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 1970812, at * 2 (D.Or. Apr. 24, 2020)(*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S.Ct. 2541, 2551, 180 L.E.2d 374 (2011)), but "[m]erits questions may be considered [only] to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied*." Id.*

---

[3]     Some courts have suggested that Rule 23 has two "implicit requirements": "That membership in the class definition by ascertainable by some objective standards and that the class representatives be members of the proposed class." *Smith v. SEECO,* Case No. 4:14CV00435, 2016 WL 10586286, at *4 (E.D. Ark. April 1, 2016)(quotation omitted). Whether or not a class member is a royalty owner in Arkansas wells where Flywheel has owned and operated under any one of the following lease forms is completely objective and there is no question Plaintiffs are members of the proposed Class.

Here, the proposed Class meets all the requires of Rule 23(a) and the requirements of Rule 23(b)(2) and Rule 23(b)(3). As explained in exhaustive detail herein, the claims of Plaintiffs and the Class members will either succeed or fail as one based on the Court's legal interpretation and application of ARK. CODE ANN. § 15-72-305, rendering class treatment appropriate.

### III.   <u>FACTUAL BACKGROUND</u>

### A.   <u>Flywheel's Uniform Royalty Payment Practices</u>

Plaintiffs and the Class Members own mineral interests in wells throughout Arkansas and have entered into oil and gas leases with Flywheel. Previously these oil and gas leases were owned and operated by SWN. SWN historically recognized the class members as "gross proceeds' leases and  paid royalty payments to the Class members based on the gross proceeds. SWN did not take expense deductions from any royalty payments or other post-production expenses as to lessors whose *leases otherwise contained language attempting to prohibit such deductions. See* Exhibit No. 2, *Flywheel's Responses to Request for Admission* No. 23, 26, 31. *See also* Exhibit No. 3, HB1549 Beck Hearing Transcript at pg. 52—55.

On May 1, 2019, Flywheel became obligated to make royalty payments to the Plaintiffs and the Class Members based on its obligation as "operator" of the leaseholds and wells in which Plaintiffs and the Class Members owned mineral interests under ARK. CODE ANN. §15-72-304. Merit and Riverbend became

obligated to make royalty payments to Plaintiffs and the Class Members as owners.

Once Merit and Riverbend acquired the leases and became the lessee and Flywheel became operator, Flywheel changed the way SWN had historically paid the Class Members. Instead of paying the Class Members based on "gross proceeds" for all royalty payments, Flywheel began paying the Class Members based on "net proceeds" on the first 1/8th royalty.

Flywheel claims ARK. CODE ANN. § 15-72-305 allows it to ignore the "gross proceeds" language of the leases on the first 1/8th royalty. This is the simple common question for all Class Members. Does ARK. CODE ANN. § 15-72-305 allow Flywheel to pay net proceeds on the first 1/8th royalty payments when the parties have contracted for royalty payments based on "gross proceeds"? **Like their predecessor SWN, Flywheel has continued to recognize and treat the Class leases as "gross proceeds" leases by paying all royalties in excess of the first 1/8th based on "gross proceeds."**

Flywheel owes royalty payments to Plaintiffs and the Class Members under the leases based on the gross proceeds received by Flywheel. Flywheel is responsible to the Plaintiffs to correctly determine, calculate and pay the royalties owed to the Plaintiffs and the Class Members on the gas produced from the Arkansas wells.

In this case, Riverbend Oil & Gas VIII, LLC n/k/a Caer Energy, LLC has produced a document entitled "**Cost Free Owner List 43724.xls**" This list includes

5,500 cost-free royalty owners (determined by Riverbend) where the operator is identified as "FLYWHEEL ENERGY PRODUCTION, LLC."

Riverbend and Merit have also produced leases, which have royalty terms that prohibit Flywheel's practice of paying the first 1/8 in net. *See* Section IV, *infra*.

The leases prohibit Flywheel's practice of paying the first 1/8 in net objectively determine class membership, as explained herein. S*ee Hill v. Kaiser-Francis-Oil Co.*, No. CIV-09-07-R, 2010 WL 2474051, *6 (W.D. Okla. June 9, 2010)("the identities of the class members are easily ascertained from defendant's payment records and county registers of deeds"). All of these lease groups require Defendants to pay royalties based on the gross proceeds received by Defendants from the sale of gas under the common lease forms.

Flywheel did not pay Plaintiffs and the Class under the gross proceeds terms of these leases. Instead, Flywheel paid based on the net proceeds for the first 1/8th of Plaintiffs and the Class' royalties but paid the gross proceeds for the remaining excess royalties owed to the Plaintiffs and the Class. Flywheel argues it can do this because of its interpretation of an Arkansas statute, ARK. CODE ANN. § 15-72-305, which it uniformly applies to the Plaintiffs and the Class's leases. This is a legal issue for the Court to decide.

## IV.   ARGUMENT

This case turns on Flywheel's common course of conduct (*e.g.,* Flywheel's

uniform application of ARK. CODE ANN. § 15-72-305), which it uniformly applies to the Plaintiffs and the Class's leases, directs at all Class Members, and affects all Class Members in the same way. This is precisely the type of gas royalty case routinely certified by other courts, including those in Arkansas, when the plaintiff has met its burden of showing class certification is appropriate. *See* Exhibit No. 4, *Survey of Cases*.

More generally, district courts will certify class actions that involve breach of contract claims which stem from uniform contracts applied through a uniform course of conduct to an identifiable class of people. Because a standard contract must be given a consistent, uniform interpretation. *See Restatement (Second) of Contracts* § 211(2)(1981). *See also Stuart v. State Farm Fire and Casualty Company,* 910 F.3d 371, 375 (8th Cir. 2018)(the viability of a theory that an insurer violated its contractual obligations by depreciating both materials and labor when calculating actual cash value, reducing size of actual cash value payments, was "well suited to class wide resolution."). In short, this Court would break no new ground in certifying this case as a class action.

**A.    Plaintiffs have met their burden of satisfying Rule 23(a)'s Requirements (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.**

**1.    Numerosity.**

Rule 23(a)(1) requires a plaintiff to show that the class is "so numerous that

joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In establishing numerosity, a plaintiff does not need to show the exact number of potential class members, only that the number is such that joinder is extremely difficult or inconvenient." *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 248, 253 (W.D.Ark. 2011)(citations omitted). When considering close questions of numerosity "courts tend to strike a balance in favor of finding numerosity." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 551 (W.D.Mo. 2014). Generally, "a putative class with over forty members meets the numerosity requirement." *Smith,* 2016 WL 10586286, at *5.

Again, a plaintiff need not establish the exact size of the class, only that joinder of all its members is impracticable because of its size or other factors. *See In re Marion Merrell Dow Inc., Sec. Litig.*, No. 92-0609-CV-W-6, 1994 WL 396190, at *2 (W.D. Mo. July 18, 1994). Relevant factors include the number and geographic dispersion of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the impracticability of joining all the class members. *See, e.g.*, *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560-61 (8th Cir. 1982)(numerosity satisfied for subclass of approximately 74 employees).

In this Action, there can be no question that joinder of all class members is impracticable. The "**Cost Free Owner List 43724.xls**" includes 5,500 cost-free

royalty owners (determined by Riverbend) where the operator is identified as "FLYWHEEL ENERGY PRODUCTION, LLC." This list also includes the Plaintiffs. *See* Exhibit No. 2, *Response to Request for Admission No. 28*. *See also* Exhibit No. 5, *Defendant's Notice of Removal* [ECF No. 1] at 3, 4 & 7 (it "operates 3,630 active natural gas wells . . . [and] there are approximately 1,466 oil-and-gas lease owners (lessors) coded in the system in such a manner that would indicate the owners are deriving royalty payments from wells under "gross royalty leases . . . the total amount of deductions from the putative class members' royalties during the applicable time period . . . is calculated to be $1,841,178.87.").

Joinder of all of the Class members holding these leases is plainly impracticable and the numerosity requirement of Rule 23(a)(1) is satisfied.

## 2.   **Commonality**.

Rule 23(a)(2) requires there be "questions of law or fact common to the class" before the Court may grant class certification. In *Dukes*, 564 U.S. at 350, the Supreme Court clarified that district courts should determine whether a common question can be answered in a classwide proceeding, such that the answer will "drive the resolution of the litigation." *Id.* at 2551. The Supreme Court has held that even a "single common question will satisfy" Rule 23(a)(2). *Id.* Where a "common course of conduct" is alleged to have caused an injury to all Class members, the commonality requirement is satisfied. *See SEECO, Inc. v. Haes*, 330 Ark. 402, 954,

954 S.W.2d 234 (Ark. 1997)("alleged overall scheme and course of conduct by the defendants designed to defraud the members of the proposed class as a group irrespective of the type of oil and gas lease or the volume of production from the leases..."). *See also Arkansas Louisiana Gas Co. v. Morris*, 294 Ark. 496, 744 S.W.2d 709 (Ark. 1988)("a common question of fact that all fixed price lessors have been treated identically by the defendant lessees for a number of years). The central and common question in this case is common to all Class Members, and capable of resolution "in one stroke," as *Dukes* requires. *Dukes*, 131 S.Ct. at 2551. There is no question that Plaintiffs satisfy the commonality requirement.

The claims of the Class Members will turn the answer to common questions, and will be proved with common evidence, specifically the propriety of Flywheel's application of ARK. CODE ANN. § 15-72-305 to gross-proceeds-type leases. If the Court finds Flywheel's conduct is not allowed by ARK. CODE ANN. § 15-72-305, all the Class Members prevail. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 683 (E.D. Okla. Oct. 3, 2019).

Because the interpretation of ARK. CODE ANN. § 15-72-305 and the Class Members' leases is a question of law, the Court can also enter declaratory judgment on behalf of the classes under Rule 23(b)(2). *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.2d 402, 427 (6th Cir. 2012)("Rule 23(b)(2) certification remains available . . . when the plaintiffs seek a declaration about the meaning of a contract").Further,

-13-

to prove a claim for breach of contract in Arkansas (Count II) a plaintiff must show:
(1) the plaintiff and defendant entered into a contract; (2) the contract required the
defendant to perform or not to perform a certain act; (3) the plaintiff did what the
contract required of it; and (4) the defendant did not do what the contract required
of it. AMI 2401. This count requires the same proof for all class members.

To prove a claim for unjust enrichment (Count III), a plaintiff must show: (1)
plaintiff provided goods to defendant who received the benefit of such goods; (2)
the circumstances were such that the plaintiff reasonably expected to paid the value
of such goods by defendant; (3) the defendant was aware that plaintiff was providing
such goods with the expectation of being paid and accepted the goods; and (4) the
reasonable value of such goods received by the defendant. AMI 2445.

On the merits, the Plaintiffs will show that Flywheel's practice is to ignore
lease terms that require the lessee to pay the gross proceeds derived from the sale of
all oil and gas (including the substances contained in such oil and gas) produced,
saved, and sold by the lessee and prohibit the lessee from deducting any gathering,
transportation, dehydration, treatment, compression, processing, marketing costs or
other costs.[4] Instead, of complying with the lease provisions, Flywheel paid the first

---

[4]    It is settled law in Arkansas that any ambiguities in an oil and gas lease are
construed against the lessee. *See Hanna Oil v. Taylor*, 759 S.W.2d 563, 565 (Ark.
1988). Further, unless something in the context of an agreement provides otherwise,
"proceeds" generally means "total proceeds." *Id.* at 564. Further, any ambiguities in

1/8th of Plaintiffs and the Class Member's royalties and paid the remaining excess royalty of the Plaintiffs and the Class Member's royalties, based on gross proceeds.

Flywheel argues it is able to do this because of Arkansas statute, ARK. CODE ANN. § 15-72-305, which it uniformly applies to the Plaintiffs and the Class' leases. This presents a common question of law, and Rule 23(a)(2) is satisfied. *See Arkansas La. Gas Co.*, 744 S.W.2d at 710 (Ark. 1988)(affirming class certification and recognizing that whether a lessee may simply ignore royalty provisions is a common question, giving rise to a claim for all class members). Moreover, although there some variation among the royalty clauses organized by Plaintiffs, *see infra*, that presents no impediment for commonality because of how Flywheel pays royalties. *See Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 764500, * 4 (W.D. Okla. Apr. 20, 2009)(holding communality was met where "there is no difference in how royalties are paid to members of the class based on the lease language."). Additionally, the question of what remedy is owed to the Class members is a question common to the Class.[5] Plaintiffs have satisfied Rule 23(a)(2)'s

---

an oil and gas lease are construed in favor of the lessor and against the lessee. *Bodcaw Oil Co., Inc. v. Atlantic Refining Co.*, 217 Ark. 50, 61, 228 S.W.2d 626, 633 (1950).

[5]     *See Smith*, 2016 WL 10586286, * 6 ("Although individual class members might have different damage amounts, individualized damages do not preclude class certification, especially in cases where a single methodology can easily determine damage amounts."). Flywheel has already determined the damages that are at issue.

requirement of commonality.

### 3. <u>Typicality</u>.

The Eighth Circuit defines typicality as requiring "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Smith v. ConocoPhillips Pipeline Co.*, 298 F.R.D. 575, 584 (E.D. Mo. 2014)(*citing Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990)). To satisfy this requirement, a plaintiff must show that there are "other members of the class who have the same or similar grievance as the plaintiff." *Wallis*, 274 F.R.D. at 254 (internal quotation and citations omitted). "Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." *In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 2512750, at *14 (D.Minn. June 29, 2012)(internal quotation and citation omitted). "Class representatives need not share identical interests with the class, only common objectives and legal and factual positions." *Cromeans*, 30 F.R.D. 543, at *12 (*citing Uponor Inc., F1807 Plumbing Fittings Products Liability Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013)).

Plaintiffs easily satisfy the typicality requirement. They share the interests of the other Class Members in being paid properly for the royalties owed to them, they

---

*See* Exhibit No. 5, *Defendant's Notice of Removal*, [ECF No. 1] at pg. 7, total deductions taken from the class is $1,841,178.87.

each have gross-proceeds type leases, and the legal and factual theories they are asserting are the same as those of the Class. S*ee Freebird, Inc. v. Merit Energy Co.*, Civil Action No. 10-1154-KHV-JPO, 2011 WL 13638, *5 (D.Kan. Jan. 4, 2011)("[H]ere, plaintiff's claims are typical of all members claims because they all entered into gas lease agreements with defendant, they assert the same legal theory to recovery royalty payments and they all suffered the same type of harm."). The Plaintiffs, like the Class, seek damages and declaratory relief to remedy the Defendants' unlawful conduct. While the relief to the Plaintiffs may result in greater or less benefits that that due to other individual Class members, "the relief sought in the action is the same regardless of the amount of [damages]," and any potential variations in individual damage amounts will not defeat typicality. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). The Plaintiffs damages can be established through the Royalty Payment Deck and Check Histories. Plaintiffs have satisfied Rule 23(a)(3)'s requirement of typicality.

### 4.    **Adequacy**.

"In determining the adequacy of representation, the Court makes a two-fold inquiry to determine whether: (1) the class representatives have common interests with members of the class; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Uponor*, 2012 WL 2512750, at *15 (internal citation and quotation omitted).

Plaintiffs satisfy this requirement. There are no conflicts between them and the Class they seek to represent, and they have clearly demonstrated that they are dedicated to prosecuting this action. *See* Exhibits No. 6, *Declarations of Plaintiffs*. Further, as previously argued, Plaintiff's counsel satisfies the requirements of Rule 23(g) and seek an order appointing them to represent the certified class. *See* [ECF No. 45] and Order [ECF No. 61]. Rule 23(a)(4) requirement of adequacy is satisfied.

**B.**     **Plaintiffs Satisfy Rule 23(b)(3).**

**1.**     **Common Questions of Law and Fact Predominate.**

Rule 23(b)(3) requires that "common issues of fact or law must predominate over questions affecting individual members." Fed. R. Civ. P. 23(b)(3). This requirement "tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). In *Amgen*, the Supreme Court held that "Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' [quoting dissent]. What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.' Fed. Rule Civ. Proc. 23(b)(3)(emphasis added)." *Amgen* 133 S.Ct. at 1196.[6] The

---

[6]     The Eighth Circuit was already in accord with this approach prior to *Amgen*. It held, "The question at class certification is not whether the plaintiffs have already

*Amgen* court directs district courts to assess whether a class' claims will "prevail or fall in unison." *Id.* at 1191. As the Eighth Circuit has explained, "individual issues are those which require evidence that varies from member to member to make a prima facie showing." *In re Zurn Pex*, 644 F.3d at 618. There are no such issues here, because all of Plaintiffs' claims are susceptible to the same common proof. Given their identical treatment by Flywheel, the class members possess such cohesion, and all Class Members base their claims on the same legal theory. *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 76500, *7 (W.D. Okla. Apr. 20, 2009).

Plaintiffs set forth above how the questions at the heart of each of Plaintiffs' claims can be answered on a classwide basis. The proof that Plaintiffs will use to establish each of the claims in the Complaint will be common to the Class, because it will focus on Flywheel's conduct: their uniform royalty payment methodology, which is applied to all Class members. Courts have repeatedly held that where an oil or gas's royalty payment practices are uniform across its lessors, as they are in this case, common issues predominate. *See* Exhibit No. 4, *Survey of Cases*.

This Action will turn on common evidence, the Court's legal analysis and

---

proven their claims through common evidence. Rather, it is whether questions of law or fact capable of resolution through common evidence predominate over individual questions." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 (8th Cir. 2011)(internal citation omitted).

interpretation of a statue, which is commonly applied to all Class Members. Damages can be determined by records from the Defendants. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

### 2.    A Class Action is Superior to Any Other Method of Adjudicating These Claims.

Rule 23(b)(3) also requires that the court find "that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class action is superior—indeed, the only—method of resolving these claims. In assessing this fact, "the court is to compare the possible alternatives to a class action and determine if any is superior to the proposed class action." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 909 (N.D. Iowa 2008). Federal Rule of Civil Procedure 23(b)(3)(A)—(D) sets forth four factors that this Court should consider in determining whether a class action is superior to individual lawsuits for the resolution of the claims at issue. Analysis of these four factors confirms the superiority of a class action in resolving these claims.

Under Rule 23(b)(3)(A), this Court should consider the interests of the Class Members in individually controlling the prosecution of separate actions. This is the classic case in which individual Class Members do not have the financial incentive or ability to challenge Flywheel's conduct individually. As such, this Action fulfills what the Supreme Court has recognized as the class action's promise of providing similarly situated plaintiffs with relatively small claims an opportunity to obtain

redress. *See, e.g., Amchem Prods.*, 521 U.S. at 617; *Klay v. Humana*, 382 F.3d 1241, 1271 (11th Cir. 2004)(noting that relatively small size of claims supports class certification especially when the "defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings"). Because individual Class Members are not in a position to take on the expense and burden of prosecuting their claims, as a practical matter, the Class Members simply will not have their claims heard without a class action.

The United States Supreme Court has recognized the prevailing judicial view that class actions are the superior mechanism to provide access to a level playing field when a multiple of property owners are pitted against a powerful energy company and its conduct in honoring standard gas contracts at issue.

In *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985), which involved gas lease royalty payments and a breach-of-contract claim for overdue royalty payments, the Court noted that:

> the class action was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the litigation was too great to permit joinder. The absent parties would be bound by the decree so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest. Modern class actions follow the same goals, permitting litigation of a suit involving common questions where there are too many plaintiffs for proper joinder. Class actions may also permit the plaintiffs to pool claims which would be uneconomical to litigate individually.

472 U.S. at 808-809 (footnote and citation omitted). Litigation has grown only more expensive since *Shutts*, and litigants face more formidable barriers here that the class action was designed to overcome. A class action is the superior form of adjudication of this dispute.

A class action is unquestionably able "to reduce litigation costs through the consolidation of recurring common issues." *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 426 (4th Cir. 2003)(internal quotation omitted). A class action is superior where the alternatives "are individual lawsuits by class members . . . [which] would be more burdensome on the class members, and it would be likely to be less efficient use of judicial resources." *See Bouaphakeo*, 564 F.Supp. at 909 (*citing Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234—35 (9th Cir. 1996)). As the Advisory Committee notes to Rule 23 state, the Court, in considering other pending litigation in its superiority analysis, should be aware that the interest of controlling separate lawsuits may be "theoretical rather than practical." Fed. R. Civ. P. 23 advisory committee's notes (1966 amendments).

Rule 23(b)(3)(C) addresses the desirability of concentrating the litigation of these claims in this forum. Here, the subject property is located in this district and the gas at issue was produced in this district in Arkansas. Further, all claims are governed by Arkansas substantive law. Concentrating the litigation of these claims in this Court is therefore the most efficient way of resolving this dispute.

Rule 23(b)(3)(D) requires an assessment of the manageability of this action. Manageability should be considered only in relationship to the alternative means of adjudication. In other words, the Court determines whether class certification would "create relatively more manageability problems than any of the alternatives (including, most notably . . . separate lawsuits by the class members)." *Klay,* 382 F.3d at 1273. *See also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative... to no litigation at all."). There are no manageability concerns here, as liability can be determined on a classwide basis, Class members are easily identifiable (indeed, they are already identified) by objective reference to Flywheel's records, and there are no administrative obstacles to the sending of the notice required by Rule 23(c)(2). Courts have administered numerous gas royalty class actions through resolution with no administrative difficulties. *See e.g., SEECO*, 330 Ark. 402.

### C. <u>Plaintiffs Satisfy Rule 23(b)(2)</u>.

With respect to Plaintiffs' claim for declaratory judgment (Count I), the proposed class satisfies Rule 23(b)(2) because Flywheel "has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A Determination of the merits of Court II (breach of contract) will turn on

the same evidence supporting Count I (Declaratory Judgment). As such, certification under Rule 23(b)(2) is also appropriate. *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1955425, at *7 (W.D. Mo. Apr. 24, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020).

## V.   <u>NOTICE</u>

Rule 23(c) of the Federal Rules of Civil Procedure requires that "for any class certified under Rule 23(b)(3)," members of the Class should receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Courts construe this Rule as vesting a trial court with wide discretion to fashion the appropriate notice in particular circumstances, "subject only to the reasonableness standard of due process." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)(concluding that due process is satisfied so long as notice is "reasonable calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). *See also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)(same). In this case, individual notice is practicable because information in the files of Flywheel makes possible individual notice to all Class Members, through electronic notice using Flywheel's "*EnergyLink Portal*" and Email notice available to all Class Members. *See* Exhibit

-24-

No. 6, *Declarations of Plaintiffs*. Plaintiffs have concurrently filed a Motion for Approval of Class Notice Pursuant to Rule 23(c) of the Federal Rules of Civil Procedure.

## VI.   CLASS DEFINITION

Rule 23(c)(1)(B) requires this Court to define the class or classes being certified. *See* Fed. R. Civ. P. 23(c)(1)(B). Plaintiffs seek an Order from this Court Certifying the Class, as defined herein under Fed. R. Civ. P. 23(b)(2) and (3) of a class of all persons who are or have been since January 2019, royalty owners in Arkansas wells where Flywheel has owned and operated under a lease form with one of the following royalty payment provisions:

### NO DEDUCTION, NO COST CLAUSES

**Lease Form No .1**:        that contain the following language "*2nd. To deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect its wells, 3/16ths of all gas (including but not limited to casinghead gas and all other constituents) produced and saved from the leased premises.* **Royalties on oil and gas payable to the lessor hereunder shall be free and clear of transportation, compression and processing costs unless such costs are to be borne by the lessee as the result of an arms-length transaction**."

C.      *To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casinghead gasoline or dry commercial gas,* **1/8th of the gross proceeds, at the mouth of the well, received by Lessee for the gas during the time such gas shall be used**.

D.      **Lessee is authorized to deduct from such proceeds** *only Lessor's pro rata share of any severance taxes that may become payable out of Lessor's share of gross production;"*

**Lease Form No. 2:**      that contain the following language "*7) ROYALTY Deductions: **Royalties shall be calculated at the point of sale and paid without deductions for costs directly or indirectly** such as producing, gathering, treating, compressing, transporting: operations, marketing, or otherwise making production  ready for sale. Oil shall be delivered free of cost into the tank, or pipeline, and gas shall be delivered free of cost into the pipeline. Lessor is responsible, however, for any severance and/or other taxes assessed on royalti*es."

**Lease Form No. 3**:    that contain the following language "*15. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law **shall be without deduction** for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee*."

**Lease Form No. 4**:      that contain the following language "*SPECIAL PROVISIONS: I. Royalty free of costs*."

**Lease Form No. 5**:      that contain the following language "*C. To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing head gasoline or dry commercial gas, 1/5 of the **gross proceeds, at the mouth of the well***, received by Lessee for the gas during the time such gas shall be used, said payments to be made monthly;"*

*D.    Lessor's **royalty shall not bear, either directly or indirectly any part of the cost or expenses of production, separation, gathering, dehydration, compression, transportation, trucking, processing, treatment, storage or marketing of the oil and gas produced from the land or any part of the cost of construction, operation or depreciation of any plant or other facilities or equipment used in the handling of the gas.***"

**Lease Form No. 6:**      that contain the following language "*B.      To pay Lessor for gas of whatsoever nature or kind (with all of its constituents)*

-26-

*produced and sold or used off the leased premises, or used in the manufacture of products therefrom, one-fifth (1/5) of the **gross proceeds received** for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than one-fifth (1/5) of the **actual amount receive by the Lessee**, said payments to be made monthly; The term gross proceeds shall mean **that Lessee shall not deduct any cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, or otherwise making the oil and/or gas produced from the lease premises read for sale or use out of Lessors share of gross production or from the price to be paid to the Lessor**."*

<u>**Lease Form No. 7**</u>:    that contain the following language: 18. ***Lessor's royalty shall never bear or be charged with, directly or indirectly, any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of oil and/or gas produced from the lease premises. There shall be no deductions from Lessor's royalty for costs and expenses associated with the construction, operation or depreciation of any pipeline, gathering system, plant or other facility or equipment for processing or treating oil and/or has produced from the lease premises***."

<u>**Lease Form No. 8**</u>:    that contain the following language: "*Scope of Addendum: The terms, agreements, conditions and provisions of the Addendums shall govern the relationship between the Lessor and the Lessee notwithstanding any contrary provision of the Lease.*

*Notwithstanding any language herein to the contrary, **any oil, gas or other proceeds accruing to the Lessor under this Lease or by state law shall be without deduction for the cost of producing, gathering. storing. separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and such other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of productions so long as they are based on Lessee's actual cost of such enhancements***."*

<u>**Lease Form No. 9**</u>:    that contain the following language "*Notwithstanding anything to the contrary contained herein, **no deduction shall be made** relative to Lessor's royalty payable on gas hereunder for the*

*costs incurred by lessee as to its operations for the producing, gathering, storing, separating, treating, compressing, or dehydrating performed on leased premises/unit area subject thereto, however any such costs which result in enhancing the value of the marketable oil, gas, or other products to receive a better price .may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancement.*"

**Lease Form No. 10**:      that contain the following language "*It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law **shall be without deduction** for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form: however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.*"

**Lease Form No. 11**:      that contain the following language "*4. Lessee shall pay, or if required by law, contribute to be paid to Lessor a royalty of 1/8th of the **proceeds realized by Lessee from the sale of all gas**, including all substances contained in such gas, but in no event more or less than the actual amount received by Lessee, less applicable taxes, said payments to be made monthly. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the market value at the well for gas so used.*

*2.      **Lessor's royalty shall never bear or be charged with, directly or indirectly, any part of the costs or expenses** of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of oil and/or gas produced from the leased premises. There shall be no deductions from Lessor's royalty for costs and expenses associated with the construction, operation, or depreciation of any pipeline, gathering system, plant or other facility or equipment for processing and/or treating oil and/or gas or their constituents produced from the leased premises. However, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on*

-28-

*Lessee's actual cost of such enhancements. However, in no event shall Lessor receive  price that is less than, or more than, the price received by Lessee*."

**Lease Form No. 12**:          that contain the following language "*1. **Lessor's royalty shall never bear or be charged with, directly or indirectly, any part of the costs or expenses** of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of oil and/or gas produced from the leased premises. There shall be no deductions from Lessor's royalty for costs and expenses associated with the construction, operation, or depreciation of any pipeline, gathering system, plant or other facility or equipment for processing and /or treating oil and /or gas or their constituents produced from the leased premises. However, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee*."

**Lease Form No. 13**:          That contain the following language "*C. To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing head gasoline or dry commercial gas, 3/16 of the **gross proceeds, at the mouth of the well**, received by Lessee for the gas during the time such gas shall be used, said payments to be made monthly;*

*D.    Lessor's royalty **shall not bear, either directly or indirectly any part of the cost or expenses** of production, separation, gathering, dehydration, compression, transportation, trucking, processing, treatment, storage or marketing of the oil and gas produced from the land or any part of the cost of construction, operation or depreciation of any plant or other facilities or equipment used in the handling of the gas;*"

**Lease Form No. 14**:          That contain the following language  "*2. Notwithstanding any language herein to the contrary, all oil, gas or other **proceeds accruing to the Lessor** under this Lease or by state law **shall be without deduction** for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil,  gas and such other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as*

-29-

*they are based on Lessee's actual cost of such enhancements. In no event shall Lessor receive a price that is greater than or less then the price received by Lessee.*"

**Lease Form No. 15**:     That contain the following language "*2. Notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this Lease or by state law **shall be without deduction** for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and such other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. In no event shall Lessor receive a price that is greater than or less than the price received by Lessee.*"

## ACTUAL AMOUNT RECEIVED ROYALTY CLAUSE

**Lease Form No. 16**:     That contain the following language "*3. Lessee covenants and agrees as follows with regard to royalty to be paid under the Lease:*

> *B.     To pay Lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 3/16ths of the **gross proceeds received** for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than 3/16ths of the **actual amount received** by the Lessee.*

> *C.     To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing head gasoline or dry commercial gas, 3/16ths of **the gross proceeds, at the mouth of the well**, received by Lessee for the gas during the time such gas shall be used.*

> *D. Lessee is **authorized to deduct from such proceeds only Lessor's pro rata share of any severance taxes that may become payable out of Lessor's share of gross production**;*"

## <u>GROSS PROCEEDS CLAUSE</u>

**<u>Lease Form No. 17</u>**:      That contain the following language "*3. Lessee covenants and agrees as follows with regard to royalty to be paid under the Lease:*

*B.   To pay Lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, **1/8th of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than 1/8th of the actual amount received by the Lessee**.*"

**<u>Lease Form No. 18</u>**:      That contain the following language "*2nd. To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, one-fourth (1/4th) of the **gross proceeds** received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than one-fourth (1/4th) of the **actual amount** received by the lessee, said payments to be made monthly.*"

**<u>Lease Form No. 19</u>**:      That contain the following language "*<u>Gross Proceeds Clause</u>*
*Paragraph 3 is hereby amended to read as follows:*

*To pay Lessor for gas of whatsoever nature or kind (with all of its constituents), including but not limited to casinghead gas, coal seam gas, coal bed methane, and all other gaseous or vaporous substances, produced and sold or used off the lease premises or used in the manufacture of products therefrom, 3/16ths of the **gross proceeds** for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than 3/16ths of the **actual amount received** by the Lessee said payments to be made monthly.*"

**<u>Lease Form No. 20</u>**:      That contain the following language "*C. To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing head gasoline or dry commercial gas, 1/5 of the **gross proceeds, at the mouth of the we**ll, received by Lessee for the gas during the time such gas shall be used, said payments to be made monthly;*"

-31-

**Lease Form No. 21**:      That contain the following language "3. Lessee covenants and agrees as follows with regard to royalty to be paid under the Lease:

B.      To pay Lessor for gas of whatsoever nature or kind (with all of its constituents) products and sold or used off the leased premises, or used in the manufacture of products therefrom, 1/8th of the ***gross proceeds received*** from the gas sold, used off the premises, or in the manufacture or products therefrom, but in no event more than 1/8th of the **actual amount rece*ived*** by the Lessee.

C.      To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture or casinghead gasoline or dry commercial gas, 1/8th of the ***gross proceeds, at the mouth of the well***, received by Lessee for the gas during the time such gas shall be used."

**Lease Form No. 22**:      That contain the following language "*4. Lessee shall pay, or if required by law, contribute to be paid to Lessor **a royalty of 15% of the proceeds realized by Lessee from the sale of all gas,** including all substances contained in such gas, but in no event more or less than the actual amount received by Lessee, **less applicable taxes**, said payments to be made monthly. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casing head gasoline or other products, Lessee shall pay Lessor 15% of the market value at the well for gas so used*."

**Lease Form No. 23**:      That contain the following language "*4. Lessee shall pay, or if required by law, contribute to be paid to Lessor a royalty of **1/8th of the proceeds realized by Lessee from the sale of all gas**, including all substances contained in such gas, but in no event more or less than the **actual amount received by Lessee, less applicable taxes,** said payments to be made monthly. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the market value at the well for gas so used.*

*On all gas produced from said lands, including casing head gas and residue gas sold at the tailgate of any plant through which gas produced from said lands may be processed, **21% of the greater of (1) the gross proceeds plus premium received by Lessee or its related or affiliated entities from the first non-affiliated purchaser of gas produced here from** or (2) market value*

-32-

*being the highest current market price reasonably obtainable under new gas contracts made at or near the time that the contract for sale of gas produced hereunder is made, in Faulkner County, Arkansas for the sale of gas of substantially the same quantity and quality (including legal quality), delivered under comparable conditions*."

**Lease Form No. 24**:      That contain the following language "*(b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by Lessee, **one-eighth of the amount realized by lessee, computed at the mouth of the well** or (2) when used by lessee off said land or in the manufacture of gasoline or other products the market value, at the mouth of the well, of one-eighth of such gas and casinghead gas*."

**Lease Form No. 25**:      That contain the following language "*(a) On gas, including casinghead gas, residue gas, or other gaseous substance, produced from said leased property, or resulting from the processing of gas produced from said leased property 3/16 of **the gross proceeds thereof***."

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Class Certification, appoint Plaintiffs as Class Representatives, and appoint the counsel below as Class Counsel.

DATED: March 24, 2023        Respectfully Submitted,

_____

M. Edward Morgan, (AR #82113)
Nathan S. Morgan (AR#09269)
MORGAN LAW FIRM, P.A.
244 Highway 65 North, Suite 5
Clinton, AR 72031-7085
(501) 745-4044 / fax: (501) 745-5358
Email: eddie@medwardmorgan.com
Email: nathan@morganlawfirmpa.com

Thomas P. Thrash, esq. (#AR 80147)
Will T. Crowder, esq. (#AR 03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: tomthrash@thrashlawfirmpa.com
Email: willcrowder@thrashlawfirmpa.com

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, March 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to:

PPGMR LAW, PLLC
G. Alan Perkins, esq.
M. Christine Dillard, esq.
Samuel S. McLelland, esq.
P.O. Box 3446
Little Rock, AR 72203-3446
(501) 603-9000 / fax (501) 603-0556
Email: Alan@ppgmrlaw.com
Email: Christine@ppgmrlaw.com
Email: Sam@ppgmrlaw.com

Michael Bailey Heister
E. Jonathan Mader
Robert Ryan Younger
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201-3325
(501) 379-1781 / fax (501) 379-3881
Email: Mheister@qgtb.com
Email: Jmader@qgtlaw.com
Email: Ryounger@qgtlaw.com

Andrew Wilson Myers
Joel S. Neckers
Judith Pace Youngman
Michael L. Vaglica
WHEELER TRIGG O'DONNELL LLP
370 17th Street, Suite 4500
Denver, CO 80202-5657
(303) 244-1800 / fax (303) 244-1879
Email: Awmyers@wtotrial.com
Email: Neckers@wtotrial.Com
Email: Youngman@wtotrial.Com

Carl Michael Daily
Colby T. Roe
DAILY & WOODS, PLLC
Post Office Box 1446
Fort Smith, AR 72902-1446
(479) 782-0361 / fax (479) 782-6160
Email: Mdaily@dailywoods.com
Email: Croe@dailywoods.Com

Will Crowder (#AR03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: willcrowder@thrashlawfirmpa.com